[L. A. No. 17306.   In Bank.—February 20, 1941.]

M. A. HOLMES, Appellant, v. CHARLES J. McCOLGAN, as Franchise Tax Commissioner, etc., Respondent.

Ralph D. Brown for Appellant.

Earl Warren, Attorney-General, H. H. Linney, James J. Arditto and Valentine Brookes, Deputies Attorney-General, and Roger J. Traynor for Respondent.

GIBSON, C. J.—This action was brought to recover money alleged to have been illegally assessed and collected as personal income taxes for the calendar year 1935. A general demurrer to the complaint was sustained without leave to amend and judgment was rendered in favor of defendant. Plaintiff appeals from the judgment.

The following facts are set forth in the complaint: In 1933 and 1934 plaintiff and certain of his children became the owners by discovery, location and purchase of an interest in mining property situated in Kern County, California, known as the Silver Queen, and a mining lease of a portion thereof known as the Emrick-Holmes lease.

In November, 1934, for a cash consideration of $4,000 they gave an option to purchase a 60 per cent interest in the Silver Queen for $1,000,000 in money and $900,000 from the proceeds of the property to be paid on a graduated percentage schedule of the production therefrom. At approximately the same time they granted an option for the purchase of the Emrick-Holmes lease for a cash consideration of $100,000.

The options were exercised in January, 1935, and the sellers received for their 60 per cent interest in the Silver Queen a cash payment of $271,000, a series of notes totalling $725,-000, and an agreement covering payments to be made from production; and for the Emrick-Holmes lease they received $100,000 cash. Plaintiff received $108,400 as his share of the cash payment on the purchase price of the Silver Queen and $16,666.66 as his share of the sum paid for the Emrick-Holmes lease.

There was no increase in the value of the property between January 1, 1935, the applicable date of the Personal Income Tax Act [Deering's Gen. Laws 1937, Act 8494], and the date of sale. The defendant Franchise Tax Commissioner treated the difference between the cost of the property and the selling price thereof as income and imposed and collected a personal income tax thereon.

■ Appellant contends that no part of the proceeds of these sales is income within the meaning of the act and that the increase in value of the property which accrued prior to January 1, 1935, and was realized by sale subsequent thereto, but prior to the enactment of the law on June 13, 1935, cannot legally be taxed as income. He advances the theory that on January 1, 1935, the property constituted a capital asset, and that the proceeds from the sale therefore represented a return of capital and not income. He contends that the act cannot be applied to these proceeds without violating article I, section 13 of the Constitution of the State of California and the Fourteenth Amendment to the Constitution of the United States. Briefly, it is his position that the act does not provide for the taxation of the gains in question; and that if it did it would be unconstitutional.

An examination of the Personal Income Tax Act makes it evident that the legislature intended to tax the gains in question. Section 36 makes the tax applicable to net income received or accrued after January 1, 1935. Section 6 of the act defines net income as the gross income computed under section 7 less the deductions allowed by section 8. Section 7 (a) defines gross income as including gains from sales of property, real or personal. Section 7 (d) provides that the method of computing such gains shall follow the federal practice as set forth in sections 111, 112 and 113 of the federal Revenue Act of 1934 [26 U. S. C. A., §§ 111–113], which sections and the sections referred to therein are incorporated

by reference. Under section 7 (d) of the California act appellant's gain, by reference to the provisions of the federal act, is the excess of the sale price of the property over its cost. Its realization after January 1, 1935, brings it directly within the provisions of the act.

Despite the applicability of the act, however, its constitutionality is brought into question by appellant's contentions that the gain in question is capital and therefore not taxable as income, and that the act, adopted on June 13, 1935, cannot be applied retroactively to January 1, 1935.

The first contention seeks to revive an issue squarely presented to this court in *Fullerton Oil Co.* v. *Johnson,* 2 Cal. (2d) 162, 167–172 [39 Pac. (2d) 796], and decided adversely to appellant's contention in an opinion which fully considered the question he raises.

That case involved the Bank and Corporation Franchise Tax Act which imposed a tax measured by net income and which incorporated by reference the federal method for computing gain or loss in its provisions for the depletion allowance for oil and gas wells. The adoption of that method brought gains accruing before the effective date of the act but realized thereafter into the measure of the tax, and the court stated that "the main point to be determined" was whether such gains were capital and not income and therefore constitutionally beyond the province of the tax. To this question it gave a clear answer: " . . . it is our opinion the tax here involved is one measured by income and not capital. It is true that by the 1931 amendment respondent is deprived of the opportunity of using the January 1, 1928, values as a base, and that it must use the cost of March 1, 1913, values as a base. It is further true that in thus computing the depletion allowance any increase in value in the properties between 1913 and 1928 would thus be included in the tax base. That fact, however, does not make the tax one measured by capital as distinguished from income as those two terms are usually understood, and are used in the act here involved. Under the federal Income Tax Act the federal courts have established the principle that 'income' within the meaning of the Income Tax Act is 'realized gain', and that such realized gain is taxable in the year of its realization regardless of when it accrued. Thus under the federal act increases in the value of capital assets accruing subsequent to March 1, 1913, are taxable as income not in the

year such increases in value occur, but in the year such increases in value are actually realized by sale or other transfer. (*Merchants Loan & Trust Co.* v. *Smietanka,* 255 U. S. 509 [41 Sup. Ct. 386, 65 L. Ed. 751]; *Eisner* v. *Macomber,* 252 U. S. 189 [40 Sup. Ct. 189, 64 L. Ed. 521].) . . . We can see no constitutional difference between accretions to capital prior to the date of the taxing statute and those occurring subsequent thereto. If increases in the value of property constitute income, and constitute income in the year in which realized rather than in the years when such increases in value accrue, it would seem that constitutionally speaking it makes no difference when such increases in value accrue—whether before or after the effective date of the taxing statute. This very point has already been decided in accordance with the above views by the United States Supreme Court.''

In the light of this judgment of the court, and the compelling reasons for following established federal practice to insure effective administration of the act, the legislature adopted the federal method of computing capital gains and losses in the Personal Income Tax Act as it did in the Bank and Corporation Franchise Tax Act. A departure from federal practice in this respect might easily create myriad administrative difficulties inimical to the interests of both the state and the taxpayers. The legislature has consistently followed the federal provisions generally in the Personal Income Tax Act. This policy makes available to the state a ground work of relevant federal experience and judicial pronouncements. ■ ''It is a cardinal principle of statutory construction that where legislation is framed in the language of an earlier enactment on the same or an analogous subject, which has been judicially construed, there is a very strong presumption of intent to adopt the construction as well as the language of the prior enactment. . . . A similar principle applies where a statute is patterned after legislation of another state, or of the federal government, or, indeed of a foreign country, which has been judicially construed in the jurisdiction of its enactment.'' (*Union Oil Associates* v. *Johnson,* 2 Cal. (2d) 727, 734 [43 Pac. (2d) 291, 98 A. L. R. 1499].)

■ The limited retroactivity of the act to which appellant objects is characteristic of the generally accepted practice of making a tax law applicable, beginning usually on January 1st, to that part of the year which precedes its enactment.

When a similar objection was raised to the federal Income Tax Act of 1913, the United States Supreme Court stated in *Brushaber* v. *Union Pac. R. R. Co.*, 240 U. S. 1 [36 Sup. Ct. 236, 60 L. Ed. 493] : ''The statute was enacted October 3, 1913, and provided for a general yearly income tax from December to December of each year. Exceptionally, however, it fixed a first period embracing only the time from March 1, to December 31, 1913, and this limited retroactivity is assailed as repugnant to the due process clause of the Fifth Amendment, and as inconsistent with the Sixteenth Amendment itself. But the date of the retroactivity did not extend beyond the time when the Amendment was operative, and there can be no dispute that there was power by virtue of the Amendment during that period to levy the tax, without apportionment, and so far as the limitations of the Constitution in other respects are concerned, the contention is not open, since in *Stockdale* v. *Atlantic Ins. Co.*, 20 Wall. 323, 331 [22 L. Ed. 348], in sustaining a provision in a prior income tax law which was assailed because of its retroactive character, it was said : 'The right of Congress to have imposed this tax by a new statute, although the measure of it was governed by the income of the past year, cannot be doubted ; much less can it be doubted that it could impose such a tax on the income of the current year, though part of that year had elapsed when the statute was passed.' ''

The principle of the Brushaber case is applicable here. It is reiterated in *Roth Drug, Inc.*, v. *Johnson*, 13 Cal. App. (2d) 720 [57 Pac. (2d) 1022], upholding the validity of the Retail Sales Tax Act of 1933 [Deering's Gen. Laws, 1937, Act 8493], even though retroactively applied to gross receipts from retail sales. In *Welch* v. *Henry*, 305 U. S. 134 [59 Sup. Ct. 121, 83 L. Ed. 87, 118 A. L. R. 1142], the United States Supreme Court went much beyond the Brushaber case in upholding a Wisconsin tax on dividends which was retroactive from 1935 to 1933. The constitutional validity of such retroactive provisions is now too well established to be questioned.

The judgment is affirmed.

Curtis, J., Shenk, J., Edmonds, J., Spence, J., *pro tem.*, and Carter, J., concurred.

Traynor, J., took no part in the consideration or decision of this case.

A petition for a rehearing was denied March 20, 1941. Traynor, J., took no part in the consideration or decision of this matter.