[Civ. No. 28576.   Second Dist., Div. Two.   Jan. 12, 1965.]

CITY OF BURBANK et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; JOE BOB JORDAN et al., Real Parties in Interest.

Joseph W. Jarrett and Loyd W. Reed for Petitioners.

No appearance for Respondent.

George W. Irving for Real Parties in Interest.

ROTH, P. J.—Petitioners seek a writ of mandate to compel respondent court to set aside its order of May 21, 1964, denying petitioners' motion to strike, overruling their demurrer to the complaint hereinafter detailed and denying their request to file an amended answer to said complaint.

The petitioners herein are: (1) a public agency, (City of

Burbank*) and (2) employees (city manager, public works director, assistant street superintendent) of that public agency, all of whom are being sued for damages alleged to have been sustained by reason of facts hereinafter generally outlined.

The complaint was filed on August 9, 1962, by the real parties in interest: Joe Bob and Adele S. P. Jordan (Jordans). The complaint, in one count,[1] alleges in substance that prior to February 12, 1962, petitioners began construction on a fire road within the territorial limits of the City. The general area of which the fire road was a part and wherein it was built and completed, is drained in a general southeasterly direction by Deer Canyon. Deer Canyon empties into Country Club Drive, which is a public street in the City. Country Club Drive runs in a general northeasterly-southwesterly direction, and has been for many years a surface drain into which Deer Canyon empties. Country Club Drive has curbs at least 2 feet high along most of its length as it climbs into a hilly area, in order to accommodate the runoff of waters flowing into it from Deer Canyon.

Every year for many years, it was alleged, surface and storm waters carrying silt and debris flowed westerly down Country Club Drive, particularly from its junction with Deer Canyon, across Sunset Canyon Drive into East Olive Avenue, and such waters, silt and debris overflowed the street confines of Country Club Drive and Olive Avenue over and upon adjacent private properties, depositing silt and debris thereon; also depositing such silt and debris in and upon the public streets, parkways and driveways and obstructing such driveways and intersecting streets to normal pedestrian and vehicular travel, and upon occasions, said conditions existed westerly to Glenoaks Boulevard. The greater the volume or more prolonged the rainfall, the greater was the overflow and the greater were said deposits. This continuing condition, it is alleged, was with the knowledge of petitioners and caused the City substantial expense each year for maintenance and cleanup operations.

The Jordans further allege that for six or seven months during the year 1961, the work of grading, fill and excavation on the fire road was done in and upon the area of the natural watershed and drainage area of said Deer Canyon, with the

---

*Hereafter called "City."

[1] In overruling the demurrer, the court specifically held that separate causes of action had not been improperly combined in one count.

use of men and heavy equipment and that as a consequence, excavated material of rocks, debris and loose material or fill which was deposited upon the sides and channel of said drainage area in a natural state, without any compaction or other protective measures being taken, and in such manner that the natural growth of trees, shrubs and ground cover were buried under said extraneous material, thus destroying the natural growth and ground cover of the area, making it totally ineffective to absorb normally the fall of rain and flow of water, and failed or neglected to stop such work and course of conduct, when they, and each of them, knew or should have known that damage to Jordans would proximately be caused thereby.

The Jordans allege further that before the fire road work was commenced, the hill and mountain area which formed the natural watershed and drainage area of Deer Canyon was covered by a natural growth of trees, shrubs and ground cover firmly rooted, which absorbed surface and storm waters and prevented substantial erosion and washing of silt and debris from said drainage area into Country Club Drive.

The Jordans are the owners of a residence built in September 1955 on residential real property fronting on Country Club Drive and located at 205 Country Club Drive. During the period between the construction of their home in September 1955 and February 11, 1962, there was no damage to their property by reason of any of the acts alleged, but they say that the manner in which the fire road was constructed, and the grading, excavating and fill activities herein and hereafter alluded to, did proximately cause surface and flood waters resulting from the rainfall between December 1961 and February 12, 1962, to wash, carry and erode excavated fill from Deer Canyon into Country Club Drive to such an extent that on February 12, 1962, said surface and flood waters overflowed the confines of Country Club Drive in, over and upon the property of the Jordans, causing them substantial injury.

It appears further from the complaint that officials of City were working to keep Country Club Drive open and passable during the rainfall, and to keep the water flowing down Country Club Drive moving toward the storm drains to the south of Country Club Drive. Country Club Drive drops steeply from higher to lower ground, but the angle of the drop is flatter in an area just to the north of 205 Country Club Drive. As the moving mud reached the flatter area, its

velocity became less, and the dirt began dropping out of solution in the water and began raising the level of Country Club Drive. Due to the sheer volume of dirt, officials of the City were unable to keep this dirt moving further on to the south along Country Club Drive. Country Club Drive then filled up to the level of the high curbs and overflowed its confines. Because the residence of the Jordans was below the level of the curbs along Country Club Drive, the water and mud flowed into the residence of the Jordans and caused them damage.

The Jordans also allege that approximately four years before February 12, 1962, the City had removed all silt and debris behind the dams maintained by the City in Deer Canyon, so weakening the dams as to prevent the check or minimization of surface and flood waters by the dam.

In an immediately following allegation, however, the Jordans allege that petitioners failed and neglected to remove silt and debris from behind other Deer Canyon dams and that as a proximate cause of such failure, the dams were filled to the top with silt and debris, so as to give no protection from surface and flood waters.

Additionally, it appears that the dams were constructed many years ago by the City and were subject to such natural wear, tear and exposure to the elements, that they had deteriorated because of City's neglect to maintain them for at least four years preceding February 12, 1962. Further, that on February 11, 1962, when petitioners were notified about the overflow of silt and debris down Country Club Drive, and were requested by the Jordans to make an adequate dike above the Jordan property, or take other measures to stop such overflow, that the City, although assuring the Jordans that it would take such action, failed and neglected to do so. That the City had at its disposal employees and equipment on February 11, 1962, and that by the proper use of both could have created a natural dam or dike at a certain place on Country Club Drive, which would keep the water, silt and debris within the street and prevent its overflow upon the Jordan's property, and that the City neglected to do so. That work of grading, excavating and fill in respect of the fire road was done in violation of various sections of the Municipal Code. That there was a dangerous or defective condition of City property and dangerous or defective methods of operation in respect of the maintenance of City property, all of which the City had notice, and that the City failed and

neglected to remedy any of said conditions; specifically, that petitioners, with knowledge of said dangerous and defective conditions of City property and methods of operation, failed and neglected by their acts and omissions to undertake ". . . reasonable necessary work or precautions to prevent said damage and injury . . . having reasonable time so to do, . . . as [petitioners] know, or ought to have known, that above normal rainfall was being experienced and predicted by the United States Weather Bureau . . . in December, 1961, and prior to February 12, 1962." That Roe Corporation (not a party herein) which was the owner of the property upon which the fire road work was done, was careless and negligent in that it failed to comply with certain sections of the Municipal Code. There are allegations too, indicating that petitioners violated certain ordinances, made certain representations and others, squinting at nuisance, trespass and inverse condemnation.

Petitioners demurred to the complaint and moved to strike certain portions thereof on the grounds that the complaint failed to state a cause of action, that several causes of action had been improperly joined and were not separately stated, that the complaint was uncertain; and that it contained irrelevant and redundant matters. On January 16, 1963, the trial court overruled the demurrer and denied the motion to strike. Petitioners then proceeded to answer the complaint.

Thereafter, on April 14, 1964, petitioners moved to vacate the above orders for a reconsideration of their demurrer and motion to strike, and for leave to file an amended answer setting forth two additional affirmative defenses predicated upon subdivisions (a) and (b) of section 835.4 of the Government Code of the State of California. Petitioners urged as authority for their position that the new public liability statutes of which section 835.4 is a part, passed by the Legislature in 1963 and codified in division 3.6 of the Government Code (§§ 810-895.4 both inclusive), are retroactive in effect and that said new public liability statutes insofar as they are applicable to the subject matter of the complaint, are decisive of the rights of the parties in this action.

The motions to reconsider were granted, but the trial court again rejected each of said motions. This petition for mandate follows.

All of the facts herein outlined occurred during the period of the moratorium legislation provoked by the case of *Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211 [11 Cal.Rptr. 89, 359

P.2d 457] (*Muskopf*). Said moratorium legislation set forth in section 22.3 of the Civil Code was in effect from September 15, 1961, to September 22, 1963. During this moratorium period, no action could be brought to trial predicated on facts within the *Muskopf* decision. The parties in such cases could file pleadings and await the end of the moratorium period, and the trial court could, in such cases as were filed, rule upon a demurrer based upon the substantive law as it then existed. (*Corning Hospital Dist.* v. *Superior Court,* 57 Cal.2d 488 [20 Cal.Rptr. 621, 370 P.2d 325]; *Thelander* v. *Superior Court,* 58 Cal.2d 811 [26 Cal.Rptr. 643, 376 P.2d 571]; *A. L. Castle, Inc.* v. *County of San Benito,* 227 Cal.App.2d 602 [38 Cal. Rptr. 855].) At the end of the moratorium period, the parties were to be governed by such new legislation as might be enacted by the Legislature. Subdivision 4 of the moratorium legislation provided that "(a) On or after the 91st day after the final adjournment of the 1963 Regular Session of the Legislature [September 22, 1963], an action may be brought and maintained in the manner prescribed by law on any cause of action which arose on or after February 27, 1961 and before the 91st day after the final. adjournment of the 1963 Regular Session, and upon which an action was barred during that period by the provisions of this act, . . ." Without further legislation the rule of *Muskopf* would, on September 22, 1963, be controlling in all actions concerning the liability of a public entity for torts for which its agents were liable.[2]

Since the events of February 12, 1962, the question of what conduct on the part of public agencies in the absence of specific statutes, or in the absence of a vested right in claimant would be the basis for tort liability, has received the attention of the Legislature of the State of California sitting in its 1963 Regular Session. The Legislature caused to be enacted extensive new legislation, comprised within division 3.6 of the Government Code, effective September 20, 1963, governing claims and actions against public entities and public employees.

The new legislation specifically provides "This act applies retroactively to the *full extent that it constitutionally can be so applied.*" (Italics added.) (Stats. 1963, ch. 1681, § 45, subd. (a); *Teall* v. *City of Cudahy,* 60 Cal.2d 431-432 [34 Cal. Rptr. 869, 386 P.2d 493].)

---

[2]*Muskopf* did not involve the dangerous or defective condition of public property. The *Muskopf* decision did not affect a case arising under the Public Liability Act. (See fn. 2, p. 189 of *Thon* v. *City of Los Angeles,* 203 Cal.App.2d 186 [21 Cal.Rptr. 398].)

This legislation sets forth the current law with respect to liability of public agencies and public employees.

Section 815 reenacts the general immunity of a public entity, "except as otherwise provided by statute." Former section 53051, Government Code, (dangerous or defective public property) was repealed and replaced by section 835, Government Code. A comparison of the two statutes shows no substantial change. (See *Teall, supra.*) The new legislation, however, in sections 830.6 through 831.8, describes certain limitations on the liability of public entities and public employees for conditions of public property, some of which had previously been established by judicial decision. Some of the new legislation establishes new defenses. (See *Teall, supra,* page 435.) Thus section 835.4 creates new defenses to the liability of a public entity under section 835.

Likewise, former section 1953, Government Code, relating to the liability of public employees, was repealed and has been replaced by the new legislation. Illustrative of this are sections 820.2 - 821.4 and 840.2 - 840.6.

Sections 820.2-822.2 set forth statutory immunities restating and clarifying the former "discretionary immunity" case law, and under section 815.2 a public entity also is entitled to the protection of that immunity.

Section 840.2 permits certain defenses to a public employee, and section 840.6 establishes a new defense for a public employee similar to that provided in section 835.4 *supra,* for a public entity.

Section 815.6 provides that, "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." This statute states the existing general rule. (*Alarid* v. *Vanier,* 50 Cal.2d 617 [327 P.2d 897] ; *Lehmann* v. *Los Angeles City Board of Education,* 154 Cal.App.2d 256 [316 P.2d 55].) However, in following sections, some immunities from this general rule, as to both the public entity and public employees, are set forth. To illustrate, neither is liable for an injury caused by the issuance, denial, suspension or revocation, or by the failure or refusal to issue, deny, suspend or revoke any permit or license (§§ 818.4, 821.2) ; neither is liable for injury caused by a failure to make an inspection, or by reason of making an

inadequate or negligent inspection, of any property other than its property (§§ 818.6, 821.4); a public entity is not liable for an injury caused by misrepresentation by an employee, whether or not such misrepresentation be negligent or intentional (§ 818.8); a public employee is not liable for negligent or intentional misrepresentation unless he is guilty of actual fraud, corruption or actual malice (§ 822.2). A public employee is not liable for an injury caused by the act or omission of another person (§ 820.8), but is liable for his own negligence (§ 820), subject to statutory immunities.

The extent to which affirmative defenses may be raised was not decided by *Teall, supra,* and that case leaves open whether the affirmative defenses permitted by the new legislation may be constitutionally applied retroactively to causes of action arising prior to the enactment of division 3.6 of the Government Code, although the indication is that they may be.

Petitioners contend that the 1963 legislation may be applied retroactively to the cause of action here alleged since the cause of action sounds in statutory negligence under Government Code, sections 53051 and 1985-2001, all of which were repealed under division 3.6 in 1963. They urge that such repeal removed any question of vested rights since a statutory cause of action, unless existent at common law, is not vested under California law.

Subsequent to our granting of the alternative writ, Mr. Presiding Justice Pierce of the Third District Court of Appeal, exhaustively analyzed and ruled on this exact question in *Flournoy* v. *State of California,* 230 Cal.App.2d 520 [41 Cal.Rptr. 190] (hearing denied).

*Flournoy* held that, as applied to the statute before the court, section 835.4, the retroactive application of such statute was not unconstitutional. The reasoning by which this result was reached is fully and adequately set forth in *Flournoy* beginning at page 530. We concur in both the result and reasoning expressed in *Flournoy.*

The facts in *Flournoy* differ from those of the case at bench only in that they present a more extreme lapse of time between the accrual of the cause of action and the legislative enactments of 1963. There the cause of action arose in 1955, prior to *Muskopf,* and prior to the moratorium legislation. The cause before us arose in 1962. The moratorium legislation was then in effect.

Speaking in respect of causes of action accruing after the passage of the moratorium legislation, the California Law

Revision Commission Reports, Recommendations and Studies, volume 5 (1963) states at page 530: "There would appear to be no constitutional infirmity in legislation which eliminates retrospectively . . . various types of newly recognized infra-moratorium causes of action. By definition, all such causes of action accrued during the period of the two-year statutory moratorium established and effective on September 15, 1961. The legislation establishing this moratorium expressly declared that such a cause of action could be maintained after the moratorium had terminated 'if and only if . . . the bringing of the action . . . is not barred by any other provision of law enacted subsequent to the enactment of this Act.' Thus, in effect, the Legislature reserved the right to change the law in the future even to the point of destroying any causes of action arising during the moratorium period. Accordingly, it seems reasonably certain that any such cause of action would not be regarded as a 'vested' one protected against impairment by constitutional limitations."[3] The moratorium legislation was fully examined and found to be constitutional in *Corning Hospital Dist.* v. *Superior Court,* 57 Cal.2d 488 [20 Cal.Rptr. 621, 370 P.2d 325].

The allegations of the Jordans' complaint substantially outlined at the outset hereof, are all stated in one cause of action. The complaint charges a dangerous and defective condition of property caused by acts and omissions of the City and its named employees, and the trial court undoubtedly felt that the various specifications of negligence do not state separate causes of actions, but simply allege specific acts and omissions, all of which combined to create the dangerous and defective condition of the public property, and that such specifications indicate the negligent manner in which the City maintained the property.

However, the Jordans urge that the complaint states facts not only on the charge of maintaining dangerous and defective property, but also states facts sufficient to predicate causes of action in inverse condemnation, in trespass, in nuisance, for statutory liability, misrepresentation and failure

---

[3]In *Thelander* v. *Superior Court,* 58 Cal.2d 811, 814 [26 Cal.Rptr. 643, 376 P.2d 571], there is no indication when the cause of action accrued; however, the court held that even though *Muskopf* was the law during the moratorium period, and that a case coming within *Muskopf* was subject to a demurrer, nevertheless, "[i]f additional legislation is enacted during the moratorium period making governmental immunity applicable in such cases, a judgment on the pleadings would be proper."

of petitioners to comply with or enforce City ordinances, non-compliance with any of which might constitute negligence per se.

■ ■ Since we adopt the result and the reasoning of *Flournoy, supra,* and hold that sections 810-895.8 of the Government Code are retroactive in their effect, it would appear obvious that if the Jordans can proceed against petitioners on one or more of the theories which they urge, that the facts which set forth one or more of said theories should be separately pleaded as separate causes of action. Some of said causes properly pleaded may be vested—others may not be. Some of the causes may be subject to the defenses permitted by the new legislation, others may be immune to such defenses. It also appears clear to us that petitioners should have the opportunity to plead all defenses permitted by the new legislation, and that the complaint should be in proper form to enable them to do so.

Writ of mandate directing the superior court to sustain the demurrer with leave to amend and permit filing of amended answer to include any and all defenses permitted by division 3.6 of Government Code, is hereby granted. In all other respects said writ is denied, and the alternative writ is discharged.

Herndon, J., and Kincaid, J. pro tem.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.