[Civ. No. 11142.    Third Dist.    June 27, 1966.]

NILS DAHLQUIST, as Guardian, etc., et al., Plaintiffs and Appellants, v. STATE OF CALIFORNIA, Defendant and Respondent.

Melvyn J. CoBen for Plaintiffs and Appellants.

Harry S. Fenton, Robert F. Carlson, Donald M. Pach and Kenneth G. Nellis for Defendant and Respondent.

PIERCE, P. J.—In this wrongful death action brought by the heirs of the decedent against the State of California[1] a demurrer was sustained to an original complaint without leave to amend. The appeal is from the judgment of dismissal which followed. We explain herein our reasons for reversal but first summarize the allegations of the complaint upon which decision hinges:

The complaint is in two counts but all allegations of the first count are adopted by the second (which merely alleges additional damages). It is alleged that on March 27, 1963, the state was in control of a bridge crossing the American River in Sacramento County known as the 16th Street bridge; that on said date plaintiffs' decedent was driving an automobile along said 16th Street and that "on the aforementioned date the defendants and each of them, negligently, carelessly and unlawfully constructed, operated, used and maintained the aforesaid bridge so as to cause the aforesaid plaintiff's vehicle to go out of control and collide with another automobile being driven South on said bridge, thereby damaging said plaintiff's vehicle and causing the death of LARETA CLEONA DAHLQUIST." It is further alleged that said public property was in a dangerous and defective condition which the state had had notice of and that it had failed to rectify said condition within a reasonable time after receipt of such notice. The defective condition of the public property involved was spelled out as follows: "the incorporation of said bridge by the defendants and each of them into a high speed thoroughfare and freeway while failing to provide traffic lanes of sufficient width or adequate dividers between opposing traffic, adequate banking of the curvature on said bridge, an excessively acute curve, inadequate drainage, and an unsafe posting of speed limits to wit 35 m.p.h. as said speed limits relate to said curvature, banking, drainage, lane

---

[1] Other named defendants (City of Sacramento and County of Sacramento) sued have been dismissed from the action. Therefore, we refer to the state as the sole defendant.

width and traffic conditions.'' There were alleged the necessary allegations of proximate cause and the fact of filing and denial of claims within the proper time limit.

It has been conceded by both sides that whatever the liability (or nonliability) of the state may be, this action comes within the purview of the 1963 government tort liability legislation (Stats. 1963, ch. 1681; Gov. Code, § 810 et seq.) because of the retroactive provision thereof. (See § 45 of said act.) We note this since the accident occurred before the effective date of the 1963 legislation—but after *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457]. (See *Hayes* v. *State of California,* 231 Cal.App.2d 48 [41 Cal. Rptr. 502].)

Some of the pertinent provisions of that 1963 legislation are, first, Government Code section 835, which sets forth the fundamental rule of liability of public entities for dangerous conditions of public property.[2] It specifies certain conditions under which a public entity is liable for injury caused by a dangerous condition of its property: (1) proximate cause, (2) that the dangerous condition was a reasonably foreseeable risk of the kind of injury which occurred, and (3) that either: (a) there was negligence by a public employee acting within the scope of his employment creating the condition, or (b) the public entity had actual or constructive notice for a time sufficient to have permitted measures to rectify the dangerous condition. (A fifth condition limiting liability will be discussed below. (See footnote 3, *infra.*)

Secondly, ''Dangerous condition'' is defined in Government Code section 830, subdivision (a), as follows: '' 'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used.''

It is the contention of the state that the allegations of

---

[2]''Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: '' (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.''

the complaint quoted above do not meet the conditions of section 835 or fall within the definition of section 830, subdivision (a).[3]

The theory upon which plaintiffs bring this action is obvious: They are contending by the allegations of their complaint quoted above that a *combination* of too-narrow traffic lanes of a highway bridge (and approach) characterized as a "high speed thoroughfare," plus inadequate dividers "between opposing traffic," plus inadequate banking of the curvature at an excessively acute curve, plus inadequate drainage, plus a posted speed of 35 miles per hour, made this a dangerous and defective bridge.

This is more than a "shot-gunning" of several possible theories; it is an allegation of six separate conditions which *combined* to make a dangerous and defective public property. Pleading is in the conjunctive not the disjunctive.

The state describes these allegations as "conclusions of law" and contends that not even ultimate facts but evidentiary facts are necessary to be pleaded in an action against the state.[4] To base our decision upon the designation properly to be given the words used in plaintiffs' complaint would be to overemphasize semantics, as we think the discussion to follow will make clear. It is unnecessary to the decision of this case that we do this.

It has been noted by Professor Van Alstyne, California Government Tort Liability, Continuing Education of the Bar (1964), section 6.66, at pages 254-255: "Under prior law, courts rigorously insisted that allegations describing the

---

[3]Section 830.6 contains another limitation to public entity liability for dangerous and defective property. Generally there is no liability if the plan or design has been approved in advance. But there is a limitation upon this limitation. The nonliability expressed in the section exists only "if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor." (Stats. 1963, ch. 1681, § 1.)

In the trial court the state contended the court should take judicial notice of the fact that plans for the 16th Street bridge and approaches had been approved. *It concedes on appeal that this is an affirmative defense which must be raised either at the trial or upon a motion for summary judgment.* (See California Government Tort Liability (Cont. Ed. Bar) § 6.72, pp. 261, 262.)

[4]It has been stated (by Justice Stone in *Waco-Porter Corp.* v. *Superior Court*, 211 Cal.App.2d 559, at p. 567 [27 Cal.Rptr. 371]): ". . . Whether a particular allegation constitutes an evidentiary fact, an ultimate fact, or a conclusion of law, is sometimes difficult to determine. It is possible for a given allegation to be any one of the three, depending upon the manner in which it is used."

allegedly dangerous condition be factually detailed and concisely descriptive, rather than general. . . .

''Counsel should recognize that the need for being specific in alleging statutory causes of action depends somewhat on how much defendant in fairness needs detailed information that plaintiff can easily provide, *and that less particularity is required when the facts are clearly in defendant's possession. Burks* v. *Poppy Constr. Co.* (1962) 57 Cal.2d 463 [20 Cal. Rptr. 609, 370 P.2d 313], . . . .'' (Italics supplied.)

The state complains, in argument, that plaintiffs have not informed it of the width of the lane, the nature of the dividers, the arc of the curve, the extent of the banking, etc. These are facts already ''clearly in defendant's possession.''

The adjuration of Code of Civil Procedure section 426 is only that plaintiffs include in their complaint a ''statement of facts constituting the cause of action, in ordinary and concise language.'' ▮ In addition to the facts noted above, plaintiffs have pleaded all the facts generally upon which the state, absent some special defense, is liable for a dangerous condition of its property: negligence, proximate cause, sufficient notice to the state to have permitted it to take remedial measures—also facts from which, if proven, a court could determine the existence of reasonably foreseeable risk. We find the facts sufficiently pleaded to withstand a general demurrer. If there were defects which a special demurrer could have reached, we do not find the allegations of the complaint vulnerable to those grounds of special demurrer asserted by the state. Moreover, and as to the possible questions of insufficiency not urged, we note the following: plaintiffs were not given an opportunity to furnish additional and more exact information (e.g., as to the decedent's position and that of the car with which she collided, if indeed those facts are known to plaintiffs[5]); plaintiffs were not allowed an opportunity to amend—no special request to so do being necessary. (Code Civ. Proc., § 472c.) ▮ If we were to affirm this judgment sustaining the demurrer the doors of discovery (Code Civ. Proc., §§ 2016-2035) would be closed to plaintiffs. And apropos discovery, we find in this modern method of fact-ascertainment reason for some relaxation of rigidity in application of the rules relating to the sufficiency of complaints, even those where public entities are involved. Under

---

[5]Plaintiffs may be entitled to the presumption of Code of Civil Procedure, section 1963, subdivision 4, since plaintiffs' decedent is dead. (*Shoemaker* v. *State of California*, 202 Cal.App.2d 379, 383 [20 Cal. Rptr. 812].)

Code of Civil Procedure sections 2016-2035, the state by depositions, interrogatories, requests of admission, etc., can ascertain every fact known to plaintiffs and their witnesses. So can plaintiffs inquire of the state. That is the purpose of discovery.

█ Government Code section 830.8 provides that a public entity is not liable under certain circumstances therein enumerated but provides that the section does not exonerate the public entity if a sign or device ''was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care.'' Of this section Professor Van Alstyne (*op. cit.*, § 6.33, pp. 219-220) observes: ''It is clear that this section relates to *warning* signs and devices, not to *regulatory* traffic-control devices that are the subject of Govt C § 830.4.''[6] The accuracy of that statement is unassailable. █ The state argues that a failure to provide ''an adequate traffic control device'' is, in effect, all that plaintiffs have pleaded here. As the discussion above shows, we do not agree with that argument. Plaintiffs have *pleaded* (and this is a pleadings case) much more than that.

Interesting, although not controlling the case at bench, is *Teall* v. *City of Cudahy* (1963) 60 Cal.2d 431 [34 Cal.Rptr. 869, 386 P.2d 493]. That case was also a pleadings case. It involved a demurrer sustained to a complaint charging the positioning of traffic lights controlling the movement of pedestrians and vehicles as the sole negligence. Justice Traynor, speaking for the court, stated on pages 433-434: ''The only issue before us is whether the court erred in ruling as a matter of law that the alleged arrangement of the lights at the intersection did not constitute a dangerous or defective condition of public property. . . .

''Public property is in a dangerous or defective condition when it 'involves an unreasonable risk of injury to the public.' (*Hawk* v. *City of Newport Beach*, 46 Cal.2d 213, 217 [293 P.2d 48].)''

In *Teall, supra,* the court held that negligently placed traffic lights were themselves dangerous and defective property, and

---

[6]Section 830.4 of the Government Code reads as follows: ''A condition is not a dangerous condition within the meaning of this chapter *merely* because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway marking as described in Section 21460 of the Vehicle Code.'' (Italics added.)

while the court stated that Government Code section 830.6 had provided new standards and procedures for determining whether a properly approved plan or design had resulted in a dangerous condition, it recognized (for other reasons not here involved) that applicability of those provisions and standards would involve *the setting up of affirmative defenses,* and the court stated that an attempt to apply those standards on demurrer was premature. If prior to the 1963 legislation inefficient lights alone were sufficient to constitute property dangerous, then cumulatively the six defects pleaded here are sufficient at the demurrer stage.

Of course, whether plaintiffs can prove what they plead or overcome the affirmative defenses which may or may not be available to the state under the government tort liability act are matters (and hurdles to overcome) not now before us. We have adverted to one of those "hurdles" in footnote 3, *supra.* Another such obstacle is section 835.4 under which (in subdivision (a) of said section) a public entity is not liable for a condition of its property if the entity establishes that the act or omission was reasonable, reasonability being determined by a weighing of the probability and gravity of potential injury to persons foreseeably exposed against the practicability and cost of taking alternative action to cure the risks. Similarly, under subdivision (b.) of said section the public entity is not liable if it establishes that action which it took to protect against risk or injury was reasonable. Again a weighing process takes place. (See *Flournoy* v. *State of California,* 230 Cal.App.2d 520, pp. 528-529 [41 Cal.Rptr. 190].)

Nothing herein contained should be construed as implying that the state cannot with the support of sufficient affidavits (or depositions—see *Saporta* v. *Barbagelata,* 220 Cal.App.2d 463, 469 [33 Cal.Rptr. 661]) move for and obtain a summary judgment under Code of Civil Procedure section 437c.

The judgment is reversed. The trial court will overrule the demurrer and further proceedings will be had in accordance with the views expressed herein.

Friedman, J., and Regan, J., concurred.