[S. F. No. 22504.   In Bank.   July 28, 1967.]

JOHN ROGER CABELL, Plaintiff and Appellant, v. STATE OF CALIFORNIA, Defendant and Respondent.

Haley, McInerney & Dillon and Haradon M. Dillon for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Robert L. Bergman and Leonard M. Sperry, Jr., Deputy Attorneys General, for Defendant and Respondent.

Harry S. Fenton, Robert F. Carlson and Kenneth G. Nellis as Amici Curiae on behalf of Defendant and Respondent.

BURKE, J.—Plaintiff in this personal injury action appeals from a summary judgment in favor of defendant State of California. As will appear, we are of the view that the trial court was correct in its apparent conclusion that the State had established a defense to the action. Accordingly, the judgment must be affirmed.

Plaintiff alleges in his complaint that in December 1961 he was a student at San Francisco State College and while attempting to push open a swinging glass door in a dormitory building his hand "slipped from the side paneling and was precipitated through the glass on the door, which was not of the safety variety," thereby injuring plaintiff; that his injuries were caused because defendants[1] negligently designed, constructed, operated and maintained the glass doors in the dormitory. Defendant State in an amendment to its answer alleges, in reliance upon section 830.6 of the Government Code,[2] that the plan, design, standards and construction of

---

[1] The contractor who constructed the dormitory building for the State of California was also joined as a defendant. No appeal has been taken from a summary judgment granted in favor of the contractor.

[2] Section 830.6: "Neither a public entity nor a public employee is liable under this chapter [i.e., §§ 830-840.6] for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the

the glass door here involved were approved by the State Division of Architecture and by State employees exercising discretionary authority in giving such approval. Defendant's motion for summary judgment was based upon the same defense.

Section 830.6 is a part of division 3.6 added to the Government Code in 1963 to deal comprehensively with the problem of governmental immunity from tort liability. ▮ The 1963 legislation, sometimes termed the Tort Claims Act, can constitutionally be applied to causes of action which arose prior to its effective date, in accordance with the express intent of the Legislature stated therein. (Stats. 1963, ch. 1681, § 45. subd. (a) ; *Heieck & Moran* v. *City of Modesto* (1966) 64 Cal.2d 229, 231-232 [49 Cal.Rptr. 377, 411 P.2d 105] ; *County of Los Angeles* v. *Superior Court* (1965) 62 Cal.2d 839, 844-846 [44 Cal.Rptr. 796 402 P.2d 868] ; see also *Teall* v. *City of Cudahy* (1963) 60 Cal.2d 431 [34 Cal.Rptr. 869, 386 P.2d 493] ; *Flournoy* v. *State of California* (1964) 230 Cal.App.2d 520 531-537 [41 Cal.Rptr. 190] ; *Hayes* v. *State of California* (1964) 231 Cal.App.2d 48 [41 Cal.Rptr. 502] ; *City of Burbank* v. *Superior Court* (1965) 231 Cal.App.2d 675 [42 Cal. Rptr. 23] ; *Loop* v. *State of California* (1966) 240 Cal.App.2d 591 [49 Cal.Rptr. 909] ; *Dahlquist* v. *State of California* (1966) 243 Cal.App.2d 208, 210 [52 Cal.Rptr. 324].) No sound basis exists for differentiating in this respect, with attendant inequality, between causes arising out of so-called ''proprietary'' as distinguished from ''governmental'' activities, or between those based on statute and those grounded on rules established by judicial decisions. (See *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457].)

Section 835[3] declares that except as otherwise provided by statute a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes certain things. including notice to the entity of the dangerous condition a sufficient time prior to the injury to have taken protec-

---

construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor.''

[3] Unless otherwise stated, all section references hereinafter are to the 1963 Tort Claims Act as found in the Government Code.

tive measures. Section 835 is a part of the chapter to which the immunity or defense of plan or design applies, which is found in section 830.6 (*ante,* fn. 2) and relied upon by defendant.

The rationale of this immunity, as explained by the California Law Revision Commission (Recommendation Relating to Sovereign Immunity 823) is: "There should be immunity from liability for the plan or design of public construction and improvements where the plan or design has been approved by a governmental agency exercising discretionary authority, unless there is no reasonable basis for such approval. While it is proper to hold public entities liable for injuries caused by arbitrary abuses of discretionary authority in planning improvements, to permit reexamination in tort litigation of particular discretionary decisions where reasonable men may differ as to how the discretion should be exercised would create too great a danger of impolitic interference with the freedom of decision-making by those public officials in whom the function of making such decisions has been vested." (See Van Alstyne. California Government Tort Liability (Cont. Ed. Bar 1964) p. 217.) Further. "The reasonableness of adoption or approval of the design, plan, or standards is measured as of the time the adoption or approval occurred. A plan or design now judged to have been reasonable when adopted is not actionable even though its defective nature is considered wholly unreasonable under present circumstances and conditions." (*Id.* p. 556.)

■ From the supporting and opposing declarations filed with respect to defendant's summary judgment motion in this case it appears that the glass through which plaintiff's hand was thrust was a pane in a fifth-floor swinging lavatory door of a State-owned dormitory in which plaintiff was a paying resident. Plans and specifications for the dormitory, including lavatory doors and the glass therein, were prepared in 1957 by the State Division of Architecture, after staff study, and thereafter approved by the State Architect, the State Public Works Board, and in November 1958 by the State Department of Public Works. "Obscure" glass, which is ⅛ inch thick, was specified for the doors. and installed, and was the type in the door here involved at the time plaintiff was injured. The wooden frame enclosing the glass was 6 inches wide; on the frame was a metal plate 4 inches wide which "was the standard type used on wooden doors that swing." According to the declaration of the deputy state architect, at the time the plans

and specifications for the dormitory were adopted and approved "the use of this type of door and glass in public buildings, including dormitories, for entrances to toilet rooms, was widespread. [It] was used in restroom doors so that the silhouettes of persons approaching . . . from opposite directions would be visible, thus eliminating the hazard of a collision. Wire glass was sometimes used for fire safety to prevent the glass from dropping out of its frame in the event of a fire. Wire imbedment in glass actually reduces its strength against breakage, and the glass specified and used in the door [here] involved . . . is twice as strong as the same thickness of glass with wire imbedded in it.''

It is thus apparent that there is substantial evidence upon the basis of which a reasonable public employee could have adopted the plan or design or standards for the lavatory doors, including the glass, or a reasonable governmental body or employee could have approved them, and that accordingly defendant State has established its immunity under section 830.6 (*ante*, fn. 2) with respect to the door as originally planned and constructed.

However, the summary judgment declarations further disclose that as early as December 1960 another student had been injured when the glass in a sixth-floor lavatory door in the dormitory had given way and broken when he had attempted to push the door open; that approximately one month before plaintiff was allegedly injured in December 1961 the glass in the door involved in plaintiff's accident had shattered and broken into pieces when a student's arm had come in contact with it, and had been replaced by the college maintenance department with the same type of glass as that originally installed; the glass pane in another lavatory door on the same floor of the dormitory had also broken about a month before plaintiff's accident.

Plaintiff contends that the type of glass originally installed had thus been shown to be dangerous and that replacement of the broken glass with the same type as originally used constituted maintenance of a dangerous condition by defendant State to which the plan or design immunity does not apply. We are persuaded that there is no merit in this contention. As noted hereinabove, the plan or design is to be judged as of the time it was adopted or approved. If the broken glass had not been replaced at all but instead had been left with sharp or jagged pieces still in the door, or if it had been replaced with glass inferior to that originally used,

then a charge of dangerous condition could not be met with the plan or design defense. But when, as here, the maintenance was in conformity with the original plans and specifications, the immunity provided by section 830.6 comes into play. Our holding that the immunity applies with respect to ordinary routine maintenance of public property is, of course, to be distinguished from a situation in which reconstruction or new construction is engaged in and in which the showing of reasonableness should relate to the time of adoption of the plan or design for such reconstruction or new construction and not to the time of adoption of the original plan or design.

The summary judgment in favor of defendant State of California is affirmed.

Traynor, C. J., McComb, J., Schauer, J.,* and Draper, J. pro tem.,† concurred.

PETERS, J.—I dissent.

The interpretation of section 830.6 of the Government Code[1] in the majority opinion is demonstrably erroneous. The section is but one of many statutes dealing with governmental immunity drafted by the Law Revision Commission after several years of study. Section 830.6 was adopted by the Legislature exactly as recommended by the commission. The latter expressed its interpretation of its proposed language as follows:

"The immunity provided by section 830.6 is similar to an immunity that has been granted by judicial decision to public entities in New York. See *Weiss* v. *Fote,* 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960)."

Thus, in no uncertain terms we are told that the intent of

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

†Assigned by the Chairman of the Judicial Council.

[1]Section 830.6 of the Government Code provides:

"Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor."

the section was to adopt the rule of *Weiss* v. *Fote, supra.*[2] That case makes it crystal clear that the immunity granted for plan and design was not intended to apply to negligent maintenance after the agency has notice that the improvement has created a dangerous situation. That is the instant case.

In *Weiss* v. *Fote*, supra, the plaintiff claimed that a city was negligent because the ''clearance interval'' on stop signs was too short. It appeared that prior to the installation of the stop signs in 1952 a city agency had made a study of traffic conditions at the intersection, that the traffic lights had been designed by the agency, and that there was no showing of any other accident in the more than three years which had elapsed since the installation of the traffic lights. The court held that since a legally authorized body in the exercise of powers delegated to it had determined that the ''clearance interval'' was proper, a jury should not be permitted to determine that it was improper. But the court was most careful to limit the scope of the immunity conferred. It stated: ''And in *Eastman* v. *State of New York*, 303 N.Y. 691 [103 N.E.2d 56], although the suit seems to have been predicated, in part, on the State's negligence in planning an intersection without a stop sign, our affirmance rested on an entirely different theory. The court's decision simply reflects the rule that, once having planned the intersection, the State was under a continuing duty to review its plan in the light of its actual operation and that the proof established a breach of such duty. More particularly, the court considered, as sufficient to demonstrate a violation of the State's continuing obligation to maintain the

---

[2]It is a well settled principle of statutory construction that, where legislation is framed in the language of an earlier enactment which has been judicially construed, there is a very strong presumption that there was an intent to adopt the construction as well as the language of the prior enactment. This principle has been held to apply when the statute copied by California is that of another state, is federal legislation, or is that of a foreign government. (*Erlich* v. *Municipal Court*, 55 Cal.2d 553, 558 [11 Cal.Rptr. 758, 360 P.2d 334]; *Los Angeles Met. Transit Authority* v. *Brotherhood of Railroad Trainmen*, 54 Cal.2d 684, 688-689 [8 Cal.Rptr. 1, 355 P.2d 905]; *Buckley* v. *Chadwick*, 45 Cal.2d 183, 193, 194-195 [288 P.2d 12, 289 P.2d 242]; *Holmes* v. *McColgan*, 17 Cal.2d 426, 430 [110 P.2d 428].) This rule by compelling analogy, is clearly applicable where the Legislature, as here, has indicated its intent to adopt a rule established by a judicial decision of another state. In such a case, absent an indication to the contrary, there is a strong presumption that the Legislature intended to follow the rule as set forth in the decision. There is certainly no indication here that the Legislature in adopting section 830.6 based on *Weiss* v. *Fote, supra*, intended to greatly expand the immunity established by that case. The majority have directly violated the limitations expressed in that case, and in so doing have violated this fundamental rule of construction.

safety of the highways, evidence that physical conditions had changed conditions or of accidents at the intersection which had occurred after the stop sign had been removed. In the case before us, however, the situation is quite different; there is no showing that the continuing obligation which rested on the municipality was violated. There is no proof either of changed conditions or of accidents at the intersection which would have required the city to modify the signal light 'clearance interval.' " (*Weiss* v. *Fote* (N.Y.), *supra,* 167 N.E.2d 63, 67.)

*Weiss* v. *Fote, supra,* makes it clear that the immunity there adopted, and adopted here by reference, has no application where the plaintiff is seeking to recover because after the approval of the plans accidents occurred which demonstrated a dangerous condition. The basis for the immunity is that, where a duly authorized agency of government in the exercise of its expert judgment has approved the plan or design for a public improvement, its judgment is to be preferred over that of a jury, and something more than a mere choice between conflicting expert opinions is required before the governmental entity may be charged with a failure to discharge its duties to protect the public. (*Weiss* v. *Fote, supra,* 167 N.E.2d 63, 66-67; see 4 Cal. Law Revision Com. Rep. 823.) Where the charge of failure to perform the duty to maintain is based on the actual operation of the improvement as shown by accidents occurring subsequent to the approval of the plan or design, the jury is not merely reweighing the matters considered by the governmental agency when it approved the plan or design, and, in the absence of a showing that the governmental agency reconsidered its plan or design in the light of the subsequent evidence that the plan or design gave rise to a dangerous condition, section 830.6 of the Government Code does not preclude recovery at least where the governmental agency has failed to remedy a dangerous condition after it has learned of the danger and had ample time to correct it. (Cf. Gov. Code, § 835.)[3]

---

[3]*Section 835 of the Government Code provides:*
"Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

The duty to maintain improvements free from dangerous defects was recognized in this state under the former Public Liability Act providing liability for injuries due to the dangerous or defective condition of public property. (E.g., *Acosta* v. *County of Los Angeles*, 56 Cal.2d 208, 210 et seq. [14 Cal.Rptr. 433, 363 P.2d 473, 88 A.L.R.2d 1417]; *Gibson* v. *County of Mendocino*, 16 Cal.2d 80, 87-88 [104 P.2d 105]; *Torkelson* v. *City of Redlands*, 198 Cal.App.2d 354, 358-360 [17 Cal.Rptr. 899].) There is nothing in the language of section 830.6 of the Government Code that would immunize governmental entities from their duty to maintain improvements free from dangerous defects or that would permit them to ignore, on the basis of a reasonable decision made prior to construction of the improvement, the actual operation of an improvement where such operation shows the improvement to be dangerous and to have caused grave injuries.

Undoubtedly section 830.6 granted a substantial extension of the immunity of public entities for the dangerous condition of public improvements compared to the liability which existed under prior law. This was its intent. (See 4 Cal. Law Revision Com. Rep., *supra,* 851.) Under the former Public Liability Act, it was held in numerous cases that where a municipality in following a plan adopted by its governing body had itself created a dangerous condition, it was per se culpable, and that lack of notice, knowledge, or time for correction were not defenses to liability. (E.g., *Fackrell* v. *City of San Diego*, 26 Cal.2d 196, 203-206 [157 P.2d 625, 158 A.L.R. 773]; *Rafferty* v. *City of Marysville*, 207 Cal. 657, 663 [260 P. 118]; *Pritchard* v. *Sully-Miller Contracting Co.*, 178 Cal.App. 2d 246, 254 et seq. [2 Cal.Rptr. 830].) It is clear that the enactment of section 830.6 abrogates this rule by limiting liability for design or plan. This is a substantial change in the law. But it does not follow that merely because an improvement is constructed according to an approved plan, design, or standards, the Legislature intended that no matter what dangers might appear from the actual operation or usage of the improvement, the public agency could ignore such dangers and defects and be forever immune from liability merely on the ground that the improvement was reasonably adopted when approved without regard to the knowledge that the public entity has that the improvement as currently and properly

(b) The public entity had actual or constructive notice of the dangerous condition under section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.''

used by the public has become dangerous and defective, or a trap for the unwary. Such an interpretation is so unreasonable that it is inconceivable that it was intended by the Legislature. But here we are not left to conjecture. The Legislature went out of its way to point out such was not its intent.

Further support for the view that the Legislature intended no such unreasonable result, if further support is necessary, appears from the sections following section 830.6, which like that section, are part of the comprehensive legislation of 1963 drafted by the commission dealing with the problem of governmental immunity. The immediately succeeding section, section 830.8, in providing that neither a public entity nor public employee is liable for failure to provide traffic or warning signals, also states that nothing in this section exonerates a public entity if certain signals were necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care. The determination of whether or not to place warning signals is ordinarily part of any plan for a highway improvement,[4] and if section 830.6 confers immunity for plan and design forever and without regard to the actual operation of the improvement, the limitation on the immunity granted by section 830.8 for traps for the unwary would be pointless and misleading. The limitation can only be viewed reasonably as a

[4]Of course, it is conceivable, however impracticable, that roads will be or have been built without plans or that determinations as to whether to place warning signs may be made by persons having no discretionary authority. Nevertheless, it would be absurd to assume that the Legislature had in mind these situations when it included the exception in section 830.8 of the Government Code. Moreover with regard to the determination to place warning signs, the majority in its opinion in *Becker* v. *Johnston, post,* p. 163 [60 Cal.Rptr. 485, 430 P.2d 43], indicate that absence of consideration whether to place warning signs is immaterial.

The majority in *Becker* while observing that the concededly dangerous condition of the road was created by the original design, state:

"Although [plaintiff] argues that the original plans upon which the county relies do not mention lighting or signs warning of the Y intersection, such items, which [plaintiff] now complains should have been provided at some point in time prior to her accident [footnote omitted], admittedly would serve only to lessen the hazard which she contends was created by the manner in which the intersection was designed, and for which section 830.6 extends immunity."

In short the majority seem to be holding in *Becker* that there can be no liability for failing to place signs warning of a dangerous condition of a planned road because the danger is inherent in the planned road. Such an approach flies in the face of the language of section 830.8, and has the practical effect of reading the exception in the latter section out of the code for any substantial purpose whatsoever.

legislative recognition that, under section 835 providing for liability for dangerous conditions, there can be liability for failure to place warning signs.

The next succeeding provision, section 831, shows even more clearly that the Legislature contemplated that section 830.6 would not eternally immunize public entities for dangerous conditions inherent in the plan or design of public improvements. Section 831 provides that the public entity shall not be liable for injury caused by the "effect" of weather conditions as such on streets and highways, and states that the "effect" on the use of streets and highways of weather conditions for purposes of the section does not include physical damage to or deterioration of streets and highways resulting from weather conditions. Streets and highways are ordinarily either planned or approved by public entities, and the plans ordinarily specify the materials to be used in the improvements. Although there may be some unplanned streets and some streets where the roadbuilders have departed from the approved plans, such situations are obviously so rare that it would be unreasonable to assume that the Legislature intended the limitation on immunity in section 831 to apply to them and not to the ordinary streets and highways constructed according to plan. Thus the Legislature must have contemplated that there could be liability for failure to maintain planned streets and highways free from defects under section 835 and that the immunity conferred by section 830.6 for planned improvements would not forever preclude such liability.

Similarly, section 831.8 granting immunity with respect to reservoirs, canals, conduits, and drains contains an exception to the immunity for persons under the age of 12 where certain conditions are met.[5] Unplanned, undesigned and unapproved

[5]Section 831.8 of the Government Code provides:

"(a) Subject to subdivisions (c) and (d), neither a public entity nor a public employee is liable under this chapter for an injury caused by the condition of a reservoir if at the time of the injury the person injured was using the property for any purpose other than that for which the public entity intended or permitted the property to be used.

"(b) Subject to subdivisions (c) and (d), neither an irrigation district nor an employee thereof nor the State nor a state employee is liable under this chapter for an injury caused by the condition of canals, conduits or drains used for the distribution of water if at the time of the injury the person injured was using the property for any purpose other than that for which the district or State intended it to be used.

"(c) Nothing in this section exonerates a public entity or a public employee from liability for injury proximately caused by a dangerous condition of property if:

"(1) The injured person was not guilty of a criminal offense under

reservoirs, canals, conduits, and drains are so rare, if not entirely nonexistent, that it would be unreasonable to assume that the exception to immunity in section 831.8 is only applicable to such improvements,[6] and the Legislature must have contemplated that liability for dangerous conditions under section 835 could extend to planned improvements of the kind named in section 831.8 and that section 830.6 did not forever preclude such liability.

In my view, the report of the Law Revision Commission and the other code sections contemporaneously enacted show that the legislative intent in adopting section 830.6 was to grant immunity for breach of the duty to plan and construct improvements free from defective and dangerous conditions, so long as the plan was not totally unreasonable, and that the intent was not to immunize public entities from their duty to maintain the improvements free from such conditions.

The majority rely upon a textbook statement by Professor Van Alstyne that the "reasonableness of adoption or approval of the design, plan, or standards is measured as of the time the adoption or approval occurred. A plan or design now

Article 1 (commencing with Section 552) of Chapter 12 of Title 13 of Part 1 of the Penal Code in entering on or using the property;

"(2) The condition created a substantial and unreasonable risk of death or serious bodily harm when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used;

"(3) The dangerous character of the condition was not reasonably apparent to, and would not have been anticipated by, a mature, reasonable person using the property with due care; and

"(4) The public entity or the public employee had actual knowledge of the condition and knew or should have known of its dangerous character a sufficient time prior to the injury to have taken measures to protect against the condition.

"(d) Nothing in this section exonerates a public entity or a public employee from liability for injury proximately caused by a dangerous condition of property if: 

"(1) The person injured was less than 12 years of age;

"(2) The dangerous condition created a substantial and unreasonable risk of death or serious bodily harm to children under 12 years of age using the property or adjacent property with due care in a manner in which it was reasonably foreseeable that it would be used;

"(3) The person injured, because of his immaturity, did not discover the condition or did not appreciate its dangerous character; and

"(4) The public entity or the public employee had actual knowledge of the condition and knew or should have known of its dangerous character a sufficient time prior to the injury to have taken measures to protect against the condition."

[6]A public entity has absolute immunity from liability for injuries caused by the natural condition of unimproved public property. (Gov. Code, § 831.2.)

judged to have been reasonable when adopted is not action-
able even though its defective nature is considered wholly
unreasonable under present circumstances and conditions.''
(Van Alstyne, California Government Tort Liability (Cont.
Ed. Bar 1964) p. 556.) The statement should not be under-
stood as meaning that because an improvement is in conform-
ity with a design or plan which was reasonable when ap-
proved, there never can be liability in the light of changed
conditions, such as defective conditions due to wear of the
improvement (cf. *Gibson* v. *County of Mendocino, supra,* 16
Cal.2d 80, 87), or conditions becoming dangerous because the
improvement to the knowledge of the entity is being used for
purposes other than those originally intended (cf. *Torkelson*
v. *City of Redlands, supra,* 198 Cal.App.2d 354, 359). The
statement precludes a finding of defective design or plan
based on changed circumstances and should not be read to
mean that a public entity is to be immunized from liability
for breach of its duty to maintain public property, including
improvements, free from dangerous conditions under section
835 of the Government Code. In any event the views of Pro-
fessor Van Alstyne expressed subsequent to the adoption of
section 830.6, are, of course, not conclusive, as is shown by the
majority's refusal to follow them in this case on the issue of
retroactivity. (Cf. Van Alstyne, *Governmental Tort Liability:
Judicial Lawmaking in a Statutory Milieu* (1963) 15 Stan.
L.Rev. 163, 243-247.)

In my view, a public entity is not exempted from liability
by section 830.6 when it continues to maintain a condition,
admittedly in accord with the original plan or design, but
which in its subsequent use is shown to be dangerous. Plain-
tiff's complaint alleges that the door to a bathroom on the
fifth floor of his dormitory was negligently maintained, and
the affidavits filed in opposition to the motion for summary
judgment show that plaintiff was a resident of the dormitory,
paying $415 per semester for room and board, that the glass
portions of both bathroom doors on the fifth floor of the dorm-
itory had shattered within a few months of plaintiff's acci-
dent and the glass had been replaced, and that a year earlier
the glass on a bathroom door on the sixth floor of the dormi-
tory had broken resulting in substantial injuries but in this
case the glass had been replaced by glass reinforced with net
mesh.[7] Plaintiff has done more than to merely raise the ques-

---

[7]After plaintiff's accident the glass was replaced by a wooden panel
window.

tion whether defendant's initial determination to use the glass was erroneous; the affidavits are sufficient to raise a factual question whether defendant knowingly and negligently maintained a condition on the premises which, in use, had repeatedly demonstrated itself as hazardous to the students. Section 830.6 does not grant public entities immunity for breach of the duty to maintain, and since there was evidence before the trial court warranting a finding of breach of that duty, it was improper to grant the motion for summary judgment on the ground that the action was barred by section 830.6.

The summary judgment should be reversed.

Tobriner, J., concurred.

Appellant's petition for a rehearing was denied September 21, 1967. Schauer, J.,* and Draper J. pro tem.,† sat in place of Mosk, J., and Sullivan, J., who deemed themselves disqualified. Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

†Assigned by the Chairman of the Judicial Council.