[Civ. No. 28502. Second Dist., Div. Four. July 14, 1966.]

BERNARD B. HOWARD et al., Plaintiffs and Appellants, v. FRANCHISE TAX BOARD, Defendant and Respondent.

Goodson & Hannam, Walter S. Weiss and Hilton I. Chodorow for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Dan Kaufman, Assistant Attorney General, Richard S. Cohen, Neal J. Gobar and Mario A. Roberti, Deputy Attorneys General, for Defendant and Respondent.

FILES, P. J.—The questions here are whether taxpayers who moved to California in 1950 owing the federal government personal income taxes for the years 1944, 1945 and 1946 on income from sources outside California may take deductions on their 1952, 1953 and 1954 California income tax returns for the amounts paid in those years as (1) legal and accounting fees incurred in settling the back federal taxes and (2) interest on the amounts owed as federal taxes. Our conclusions are that the interest is deductible but the legal and accounting fees are not.

This action was brought by the taxpayers in the superior court for a refund of California personal income taxes allegedly overpaid. The trial court gave judgment for defendant, and the plaintiff taxpayers have appealed from the judgment. The case has been submitted here upon an agreed statement of facts.

The taxpayers are husband and wife. Prior to June 1, 1950, they resided in Michigan, but ever since that date have been California residents. They have always been on a calendar year cash basis of accounting. On November 6, 1952, they settled a federal income tax dispute concerning their taxable years 1944, 1945 and 1946. By the terms of the settlement they paid the United States approximately $250,000 plus interest[1] thereon. In accordance with this settlement the taxpayers paid the following amounts of interest to the United States:

| | |
|---|---|
| 1952 | $34,122.23 |
| 1953 | 31,772.83 |
| 1954 | 18,000.25 |
| | $83,895.31 |

---

[1]The interest includes that which had accrued prior to November 6, 1952 (''delinquency interest''), and that accruing on the stipulated deficiency after that date (''deficiency interest'') (see *Ingannamorte* v. *United States*, 189 F.Supp. 341). Neither party is here asserting that California should treat one portion of this interest any differently from

For legal and accounting services rendered in 1952 and 1953 in connection with this settlement the taxpayers paid the following amounts:

| 1952 | $12,174.00 |
| 1953 | 4,004.40 |
| | $16,178.40 |

On their California personal income tax returns for the taxable years 1952, 1953 and 1954 they claimed as an interest deduction the items (totaling $83,895.31) set forth above, and they claimed as a miscellaneous deduction for the years 1952 and 1953 the legal and accounting fees. These deductions were disallowed by the defendant Franchise Tax Board, additional taxes demanded by defendant were paid, and the necessary administrative procedures were carried out as a basis for this action. The parties are agreed that the only issues are whether the taxpayers were entitled to the deductions.

The applicable portions of the California Revenue and Taxation Code, as they read during the years in issue, are as follows:

Section 17302.5: "In computing net income there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."[2]

Section 17304: "In computing net income there shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness of the taxpayer. However, no deduction shall be allowed (a) to the extent that it is connected with income not taxable under this part; or (b) for interest paid or accrued within the taxable year on indebtedness incurred or continued to purchase or carry obligations, the interest upon which is wholly exempt from the tax imposed by this part. The proper apportionment and allocation of the deduction with respect to taxable and nontaxable

another, it being plaintiffs' contention that all is deductible and defendant's contention that none is deductible.

[2]Replaced in 1955 by section 17252 which now reads:
"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—
"(a) For the production or collection of income;
"(b) For the management, conservation, or maintenance of property held for the production of income; or
"(c) In connection with the determination, collection, or refund of any tax."

income shall be determined under rules and regulations prescribed by the Franchise Tax Board."[3]

Section 17351: "In computing net income no deduction shall in any case be allowed in respect of:

" . . . . . . . . . . . .

"(e) [*Amounts allocable to exempt income.*] Any amount otherwise allowable as a deduction which is allocable to one or more classes of income (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from the taxes imposed by this part.

" . . . . . . . . . ."[4]

Counsel have been unable to find any court decision, state or federal, which passes upon the precise questions presented here. They have offered arguments based upon language used by courts in discussing other issues, but the pertinence of those opinions is much too tenuous to control a decision here. No true analogies have been offered.

The United States Internal Revenue Code contains provisions similar to those here under consideration, so that federal interpretations are relevant (*Holmes* v. *McColgan,* 17 Cal.2d 426, 430 [110 P.2d 428]), but the federal authorities provide little more than historical background.

As a basis of decision we are left to the language of the code, the regulations, and such understanding as we have of the legislative purpose. ▮▮▮ "The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Select Base Materials, Inc.* v. *Board of Equalization,* 51 Cal.2d 640, 645 [335 P.2d 672].)

### *Legal and Accounting Fees*

An examination of the cases interpreting the comparable federal statute satisfies us that during the years 1952 through 1954 legal and accounting fees incurred in connection with federal income tax problems were deductible on a California return only under section 17302.5 as "expenses paid or

---

[3]Now section 17203.

[4]Replaced in 1955 by section 17285, subdivision (a), which now reads: "No deduction shall be allowed for—

"(a) Any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from the taxes imposed by this part, or any amount otherwise allowable under Section 17252 (relating to expenses for production of income) which is allocable to interest (whether or not any amount of such interest is received or accrued) wholly exempt from the taxes imposed by this part."

incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.''

In *Trust of Bingham* v. *Commissioner of Internal Revenue* (1945) 325 U.S. 365 [65 S.Ct. 1232, 89 L.Ed. 1670, 163 A.L.R. 1175] the court held that the trustees of a testamentary trust had properly deducted (in their federal income tax return) the counsel fees and expenses incurred in 1940 in contesting an income tax controversy with the government. The statute under which the deduction was allowed, section 23(a)(2) of the Internal Revenue Code of 1939, was identical with the language quoted above from California's section 17302.5. In the *Bingham* opinion the Supreme Court declared that the Treasury Regulations, under which the government had disallowed the deductions, were ''not in conformity to the statute.'' (325 U.S. at p. 377.)

Following the *Bingham* decision the Treasury Regulations with respect to section 23(a)(2) of the Internal Revenue Code were changed to include the following language:

''Expenses paid or incurred by an individual in the determination of liability for taxes upon his income are deductible.'' (Treas. Reg. 111, § 29.23(a)-15, as amended, T.D. 5513, 1946-1 Cum. Bull. 61.)

The identical language appears in regulation 17302.5 of the regulations of the California Franchise Tax Commissioner (predecessor of the Franchise Tax Board), published in 1946, and continuing in effect during the tax years here involved.

Despite the simplicity of this regulation it is necessary to have in mind that it was created as an interpretation of statutes (Int. Rev. Code, § 23(a) (2), and Rev. & Tax. Code, § 17302.5) which authorized deduction of expenses incurred ''for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.'' What the regulation was saying was that for an individual taxpayer, the expense of determining his tax liability was one of the ordinary and necessary expenses of his activity as an income-producer. Since it was the policy of the law to tax net rather than gross income, it was only fair to allow the taxpayer to deduct those legal and accounting fees which were a normal part of computing and adjusting his tax liability, which was in itself a necessary incident of income-production.[5]

---

[5]The case at bench is not affected by the substantial change which occurred with the enactment of the 1954 Internal Revenue Code section

This pre-1954 philosophy of the deductibility of legal and accounting fees is illuminated by two decisions of the United States Supreme Court.

In *Lykes* v. *United States* (1952) 343 U.S. 118 [72 S.Ct. 585, 96 L.Ed. 791] the court held that, under section 23(a)(2) of the 1939 Internal Revenue Code, attorney fees were not deductible when incurred in contesting gift tax liability arising out of a gift of shares of stock to the taxpayer's wife and children. The court reasoned that the expense did not arise out of the production or collection of income or the management, conservation or maintenance of property held for the production of income, even assuming that the stock was itself held for the production of income. Nor did the court consider it significant that a successful contest would conserve some of the taxpayer's income-producing property.

In *United States* v. *Gilmore* (1962) 372 U.S. 39 [83 S.Ct. 623, 9 L.Ed.2d 570], holding that, under section 23(a)(2) of the 1939 Internal Revenue Code, attorney fees incurred in contesting property interests in a divorce action were not deductible, the court said (at p. 44):

"For income tax purposes Congress has seen fit to regard an individual as having two personalities: 'one is [as] a seeker after profit who can deduct the expenses incurred in that search; the other is [as] a creature satisfying his needs as a human and those of his family but who cannot deduct such consumption and related expenditures.' The Government regards § 23(a)(2) as embodying a category of the expenses embraced in the first of these roles."

Having concluded that the legal and accounting fees incurred in a tax controversy were deductible only because they were deemed a necessary incident of the search for profit and were therefore fairly classified as a cost of production, we turn to the application of Revenue and Taxation Code section 17351, subdivision (e), forbidding deductions of amounts "allocable to" exempt income.

Regulation 17351(d) contained this explanation of the legislative intent, which we accept as authoritative:

---

212(3) and the 1955 enactment of California Revenue and Taxation Code section 17252 in identical language (quoted in fn. 2, *supra*) authorizing deduction of expenses incurred in the "determination, collection, or refund of any tax."

This language, added as subdivision (3) of Internal Revenue Code section 212 (and in Rev. & Tax. Code, § 17252), reflects a new statutory policy authorizing deductions not allowable under the former law. (See *United States* v. *Gilmore* (1962) 372 U.S. 39, 48, fn. 16 [83 S.Ct. 623, 9 L.Ed.2d 570, 577].)

"The object of Section 17351(e) is to segregate the exempt income from the taxable income, in order that a double exemption may not be obtained through the reduction of taxable income by expenses and other items incurred in the production of items of income wholly exempt from tax. Accordingly, just as exempt items of income are excluded from the computation of gross income under Chapter 3, so this provision of the law excludes from the computation of deductions under Sections 17301-20.7 all items referable to the production of exempt income. (See also Sections 17302 and 17304.)"

 Since the deductibility of the legal and accounting fees in this case depends upon their status as expenses incurred in the production of income, they clearly fall within the prohibition of section 17351, subdivision (e). The only income from which these fees could properly be deducted as a production expense is the exempt 1944-1946 income. It necessarily follows that the deduction must be disallowed "in order that a double exemption may not be obtained."

### Interest

The deductibility of interest involves different considerations because interest is deductible, under both state and federal systems, upon grounds having nothing to do with the taxpayer's search for profit. For example, interest on such a personal transaction as the purchase of a home is deductible. (See *Preston* v. *Commissioner of Internal Revenue* (2d Cir. 1942) 132 F.2d 763, 766.) On the other hand, some interest expense does arise out of income-producing activity, such as interest on money borrowed to finance a business. The statutes and regulations must be examined with that difference in mind.

Section 17304 of the Revenue and Taxation Code provided generally that interest was deductible, except when (a) connected with exempt income or (b) incurred to purchase or carry obligations bearing tax-exempt interest.

In the present case, the interest payments are allowable deductions unless "connected with income not taxable" or unless "allocable to" exempt income under section 17351, subdivision (e).

 For guidance as to legislative intent we again look to the regulations adopted by defendant board. Regulation 17304 contains nothing which helps to resolve this issue. But regulation 17351(d), quoted above, points out that the object of section 17351, subdivision (e), is "that a double exemption may not be obtained through the reduction of taxable income

by expenses and other items incurred in the production of items of income wholly exempt from tax.''

At the end of this regulation is a cross-reference to section 17304, indicating that this principle is to be applied in the deduction of interest. The regulation thus indicates that non-deductible interest is that which is incurred in the production of tax-exempt income. The reference to ''double exemption'' is meaningful only in relation to those deductions which are a part of the cost of producing income. Deductions which are a part of the cost of production are allowed because it is the policy of the law to tax the net rather than the gross income. If a portion of the gross is excluded, the cost items allocable to it are not appropriate deductions. Excluding an item of gross income and allowing deduction of its cost of production would constitute the ''double exemption'' referred to in the regulation. But there are other kinds of deductions which are not part of the cost of producing income, and which are allowed for other reasons. Charitable contributions, medical expenses, certain taxes, and certain interest payments fall within the latter category. ■ The necessary conclusion is that such deductions, not being a part of the cost of producing income, and not being involved in the ''double exemption'' problem, are not the kind of deductions which section 17351 or 17304 intends to disallow.

In the present case the interest paid in 1952-1954 on the 1944-1946 federal tax deficiencies was not a cost of producing the 1944-1946 income in the ordinary usage of that phrase. Paying interest to the government is not a necessary or usual consequence of having an income or of incurring income tax liability. Ordinarily income taxes are paid, and are expected to be paid, without the accrual of any interest.

Although it can be argued that the employment of counsel, either before or after a tax deficiency arises, is a necessary event in the career of a ''seeker after profit,'' the same cannot be said for the incurring of interest on a deficiency. The interest on the deficiency is much too remote from the profit-seeking process to be deemed an expense of production.

The board argues that the interest here must be deemed ''connected with'' or ''allocable to'' the exempt income because, but for the 1942-1944 income, there would have been no tax, no deficiency, no interest. This theory reverses the causal relationship which the statute intends. The purpose of the statute is to disallow deductions because they were incurred to produce exempt income, not because in some remote

way they resulted from the receipt of exempt income. It was not the intention of the Legislature to disallow the deductibility of any and all personal items whenever it could be shown that they would not have been incurred but for the fact that the taxpayer had received some exempt income.

Considering the purpose of the law, as explained in the regulations, we must conclude that the interest payments here were not "connected with" the exempt income within the meaning of section 17304, or "allocable to" it under section 17351, subdivision (e), and the applicable regulation.

The judgment is affirmed insofar as it denies recovery based upon the payment of legal and accounting fees. With respect to plaintiffs' claim based upon the interest payments, the judgment is reversed with directions to enter judgment in favor of plaintiffs.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied August 4, 1966, and respondent's petition for a hearing by the Supreme Court was denied September 7, 1966.