STONE, J.
 

 Plaintiff appeals from a judgment entered on a nonsuit in her action against the County of Kern for dam
 
 *306
 
 ages for personal injuries. At the time of the accident the County of Kern owned, operated and maintained boating facilities at Lake Isabella.
 

 Plaintiff and her husband launched their boat at a dock on the lake in the forenoon of Monday, April 13, 1964. Between 4:30 and 5 o ’clock they returned to a launch site designated “Dock 16,” which they had not previously used. It consisted of a concrete driveway extending into the water for backing boat trailers into water deep enough to permit launching and removing boats. A concrete floating dock near the end of the underwater concrete driveway was connected to the shore by a wooden ramp parallel to the driveway. The ramp consisted of 2 by 6 planks fastened to a channel iron frame at either end by a single centered bolt. Plaintiff was assisting her husband load their boat on the trailer by holding the stern line taut against the action of the wind and water, walking sideways, guiding the boat toward the trailer. Water washing over the concrete dock and the wooden ramp was murky from mud, debris and sand stirred up by the launching and beaching of boats. As she stepped from the dock onto the ramp, her right foot and leg plunged through the hole left by a missing plank, resulting in injuries.
 

 Defendant county’s motion for nonsuit was granted upon the ground plaintiff failed to establish that the county had notice, either actual or constructive, of the dangerous condition for any period of time prior to the accident. Plaintiff contends there was sufficient evidence to submit this issue to the jury as a question of fact. Plaintiff makes two additional arguments, which we shall dispose of preliminarily.
 

 First, plaintiff asserts the 1963 Public Liability Act does not apply to proprietary functions of government. This contention is abrogated by
 
 Cabell
 
 v.
 
 State of California, 67
 
 Cal.2d 150 [60 Cal.Rptr. 476, 430 P.2d 34], wherein the Supreme Court said, at page 152: “No sound basis exists for differentiating in this respect, with attendant inequality, between causes arising out of so-called ‘ proprietary ’ as distinguished from ‘ governmental ’ activities. ...”
 

 Next, plaintiff assigns as error the trial court’s rejection of her offer to prove by the testimony of an expert witness that the launching facilities at dock 16 were dangerous by reason of the plan, design, standards and construction adopted by the county. No such allegation was made in the complaint, which pleads only that a dangerous condition existed and that the county had notice of the dangerous condition and failed to remedy it. The record reflects no request
 
 *307
 
 by plaintiff to amend her complaint at any time, not even when the offer of proof was made.
 

 Plaintiff argues that the scope of the complaint was enlarged by the pretrial order to include faulty plan, design, standards and construction of the launching facilities by the following specification of issues: “Whether or not there existed a dangerous condition of public property at the time of the injury.” She reminds us that the courts, in California at least, have rejected the impediments of strict construction and now take a liberal approach when interpreting pleadings. Although this is correct as a general statement, it must be applied with regard to the basic reason for liberally construing pleadings, namely, to further justice or, conversely, to prevent an injustice. As said in 39 Cal.Jur.2d, page 117: “The code provides that the statement of facts constituting the cause of action must be in ordinary and concise language. Complaints are not to be tested for literary excellence. But it is a fundamental principle of pleading that a complaint must clearly and distinctly state the ultimate facts relied on, so that the court may fully understand the issues, so that the defendant may be apprised of the nature, source, and extent of the plaintiff’s cause of action, and so that the defendant may not be taken by surprise, may plead to the issues, and may plead the judgment in bar of a subsequent action. ’ ’
 

 The particular negligence with which plaintiff would charge the county presages consequences far beyond the marshaling of evidence by way of defense, which can sometimes be accomplished rather quickly and upon short notice. Section 830.6 of the Government Code clothes a public entity with immunity against a charge of defective plan or design or standards “where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval. ...” But this immunity is available to a public entity only if it is specifically pleaded as an affirmative defense.
 
 (Teall
 
 v.
 
 City of
 
 Cudahy, 60 Cal.2d 431, 435 [34 Cal.Rptr. 869, 386 P.2d 493] ;
 
 Dahlquist
 
 v.
 
 State of California,
 
 243 Cal.App.2d 208, 214 [52 Cal.Rptr. 324].)
 

 Since the pleadings and the pretrial order did not apprise the county that it was being charged with negligent design, plan, standards and construction of the launching facilities, the county did not affirmatively plead the defense available
 
 *308
 
 under Government Code section 830.6. Consequently had plaintiff been permitted to introduce evidence of negligent design, plan, standards or construction, under the doctrine of
 
 Teall
 
 the county would have been precluded from offering evidence by way of defense.
 

 We conclude that the plain, ordinary language of the complaint and of the pretrial order fails to allege negligent plan, design, standards 'and construction, and to wrench the language to hold that they do would perpetrate an injustice.
 

 Turning to the principal question on this appeal, whether the county had notice of the defect, we note at the outset that there is no doubt that the missing plank constituted a dangerous condition. This uneontroverted fact brings the ease within the purview of Government Code section 835.
 
 [1]
 
 Plaintiff produced no evidence that the dangerous condition was caused by an act or omission of an employee of the county, as delineated in subdivision (a) of section 835; she rests her appeal on subdivision (b), which imposes liability upon a public entity where it is shown there was constructive notice of the dangerous condition.
 

 Subdivision (b) of section 835 refers to section 835.2 for the criteria which must be met to prove constructive notice, so we turn to section 835.2, which provides:
 

 “ (a) A public entity had actual notice of a dangerous condition within the meaning of subdivision (b) of Section 835 if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.
 

 “(b) A public entity had constructive notice of a dangerous condition within the meaning of subdivision (b) of Section 835 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character. On the issue of due care, admissible evidence includes but is not limited to evidence as to :
 

 
 *309
 
 “(1) Whether the existence of the condition and its dangerous character would have been discovered by an inspection system that was reasonably adequate (considering the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger to which failure to inspect would give rise) to inform the public entity whether the property was safe for the use or uses for which the public entity used or intended others to use the public property and for uses that the public entity actually knew others were making of the public property or adjacent property.
 

 “ (2) Whether the public entity maintained and operated such an inspection system with due care and did not discover the condition. ’ ’
 

 Plaintiff presented considerable evidence concerning the adequacy of the overall plan of inspection service maintained by the county, and of the inspection services actually performed by county employees. As we view the record, evidence as to this issue is open to more than one interpretation and had that been plaintiff’s only hurdle, certainly the question should have been submitted to a jury for resolution. But in determining constructive notice, the method of inspection is secondary; the primary and indispensable element of constructive notice is a showing that the condition existed before the accident. Section 835.2 imposes liability “only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character. ’ ’
 

 The rules for testing the sufficiency of evidence relied upon to prove constructive notice were not changed by the enactment of the California Tort Claims Act. (Van Alstyne, Cal. Government Code Liability, pp. 207-210.) The critical test formulated by the eases is whether “the condition has existed long enough that it may be inferred that a reasonable inspection would have ascertained its existence.”
 
 (Gentekos
 
 v.
 
 City & County of San Francisco,
 
 163 Cal.App.2d 691, 697 [329 P.2d 943]. See also
 
 Peters
 
 v.
 
 City
 
 §
 
 County of San Francisco,
 
 41 Cal.2d 419 [260 P.2d 55];
 
 Fackrell
 
 v.
 
 City of San Diego,
 
 26 Cal.2d 196 [157 P.2d 625, 158 A.L.R. 773] ;
 
 Reinach
 
 v.
 
 City & County of San Francisco,
 
 164 Cal.App.2d 763 [331 P.2d 1006].)
 

 A plaintiff can meet this burden with circumstantial evidence, of course
 
 (Rowan
 
 v.
 
 City & County of San Francisco,
 
 224 Cal.App.2d 308 [53 Cal.Rptr. 88];
 
 Mackoff
 
 v.
 
 Biltmore
 
 Garages,
 
 Inc.,
 
 222 Cal.App.2d 846, 849-850 [35 Cal.
 
 *310
 
 Rptr. 462, 4 A.L.R.3d 930] ;
 
 Rhodes
 
 v.
 
 City of Palo Alto,
 
 100 Cal.App.2d 336, 343 [223 P.2d 639]), and plaintiff contends the testimony of her husband supplied such evidence that the plank was missing for a considerable period of time before the accident occurred. He testified that he examined the wooden ramp after the accident and found the bolts that had fastened the missing plank still affixed to the frame, but he found no wood splinters attached to the bolts or to the channel iron. He said there was dirt, debris, sand and mud on the surface of the steel frame where the plank was missing, but he was unable to distinguish this condition from that of any other surface area that was washed over by the dirty water.
 

 In reopening the case and questioning Mr. Strongman about the condition of the ramp in the area where the plank was missing, the avowed purpose of plaintiff’s counsel was, to use his words: “I am simply attempting to show, Ross against Orange County, in which a stop sign was down and the way they established the length of time it was down was that the grass underneath it had yellowed so that it appeared the sun had not reached it. ’ ’
 

 However, on cross-examination, Mr. Strongman testified:
 

 1 ‘ Q. (Mr. Hitchcock) Do you know, Mr. Strongman, where the sand or debris came from that was deposited on that channel iron? A. I am afraid that would be pretty hard to determine.
 

 Q. So, you don’t know whether or not there was similar sand or debris between or under any adjoining planks ? A. No, sir.
 

 Q. You don’t know whether or not the condition which you saw on the channel iron at the point where the plank, where there was no plank, was any different from any other location on that ramp or that channel iron, do you? A. No, sir. ’ ’
 

 The trial court granted a nonsuit upon the sole ground the foregoing testimony falls short of proving the condition that caused plaintiff’s injuries, the missing plank, existed for any length of time prior to the accident.
 

 The evidence must be tested by the familiar rule, repeated in
 
 O’Keefe
 
 v.
 
 South End Rowing Club,
 
 64 Cal.2d 729, 733 [51 Cal.Rptr. 534, 414 P.2d 830], that “ ‘A nonsuit may be granted only where, disregarding conflicting evidence on behalf of the defendants and giving to plaintiff’s evidence all the value to which it is legally entitled, therein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evi
 
 *311
 
 dence of sufficient substantiality to support a verdict in favor of the plaintiff.’ [Citations.] ”
 

 Looking at other cases that discuss a similar question, we find that in
 
 Cheyney
 
 v.
 
 City of Los Angeles,
 
 119 Cal.App.2d 75 [258 P.2d 1099], the court affirmed a judgment entered on a nonsuit where the evidence disclosed that the plaintiff was injured when she descended a stairway leading from a parking lot to a beach at night. The parking lot, the stairway and the beach were under supervision of the defendant city. Sand had drifted or washed away below the last step which was left 29 inches above the surface. It was dark, there were no lights or flares, and plaintiff, who could see “just darkness,” stepped from the last step and fell into the sand. She was aware that the action of the waves and tides was at this time eroding the beaches along the coast in this area. The beach supervisor, whose office was 700 to 800 feet from the stairway and whose duty it was to watch all portions of the beach to protect the safety of visitors and to inspect and keep in repair the stairway, had no knowledge the sand had eroded below the level of the bottom step. Waves and tides had varied the sand level as much as 5 feet from time to time, and such change could take place within 24 hours. The appellate court, Me-Comb, J. writing the opinion, affirmed the nonsuit, stating that “In the instant case there is no evidence that the alleged defective condition was either conspicuous or notorious or as to how long it had existed. ’ ’ (P. 77.)
 

 In
 
 Kotronakis
 
 v.
 
 City & County of San Francisco,
 
 192 Cal.App.2d 624 [13 Cal.Rptr. 709], the plaintiff slipped in a puddle of vomit and sustained injuries. A judgment in his favor was reversed, although there was testimony that frequently there was vomit on the sidewalk and bottles were strewn about the area. The court said, at pages 629 and 630: “It is apparent that the occurrence of vomit where respondent fell, as well as in other parts of the 1 skid row’ area of which it is a part, is frequent. But there is a total lack of evidence that the particular vomit on which respondent slipped had been there longer than over night. . . .
 

 “While both the notoriety of the condition [citation] and the length of time it must have existed [citation] are normally questions of fact which are to be resolved by the jury, if the evidence as to either of these elements is insufficient
 
 as a matter of law
 
 the jury’s verdict can not stand. ”
 

 In the light of the evidence, we conclude the trial court did not err in holding that plaintiff failed to meet the burden of producing evidence from which it would be reason
 
 *312
 
 ably inferred that “the condition had existed for such a period of time and was of such obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.” (Gov. Code, § 835.2, subd. (b).)
 

 The judgment is affirmed.
 

 Conley, P. J., concurred.
 

 Gargano, J., being disqualified, did not participate.
 

 [1]
 

 Government Code section 835 reads: “Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
 

 ‘ ‘
 
 (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of Ms employment created the dangerous condition; or
 

 1
 
 ‘
 
 (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.”