Filed 6/29/22  Sheks Construction Co. v. City of South S.F. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| SHEKS CONSTRUCTION COMPANY et al.,<br><br>　　　Cross-complainants and Appellants,<br><br>v.<br><br>CITY OF SOUTH SAN FRANCISCO,<br><br>　　　Cross-defendant and Respondent. | A163204<br><br>(San Francisco County Super. Ct. No. CGC-17-557970) |

Sheks Construction Company and its owner, Luen Shee Shek (collectively, Appellants), appeal the trial court's judgment in favor of the City of South San Francisco (City) on Appellants' cross-complaint for equitable indemnity and contribution.  We reverse the court's award of fees and costs, and otherwise affirm.

BACKGROUND

On August 1, 2016, Ramon Gomez (Plaintiff) fell while skateboarding across an intersection (the Intersection) in a residential neighborhood in the City.  Plaintiff does not remember the accident.  When police responded,

1

there was a hose stretched diagonally across the Intersection, connecting a fire hydrant to a residential construction site (the Site). No cones or signs warned of the hose. Appellants were the plumbing subcontractor at the Site, and the hose had been placed in the Intersection that morning by one of Appellants' employees, to fill the pipes in advance of an inspection scheduled for that day.

Approximately a year before the accident, the City issued a permit authorizing use of the fire hydrant for work at the Site. The permit was valid from August 10, 2015 to October 10, 2015 and, by its own terms, expired at the end of that period. The permit was not extended or renewed after October 10, 2015. After the permit expired, water from the hydrant continued to be used at the Site for construction purposes.

Plaintiff sued Appellants, as well as the Site's owner/general contractor (Owner), other companies and individuals associated with the Site, and Doe defendants, alleging claims for premises liability and negligence. Plaintiff's premises liability claim included theories of failure to warn and dangerous condition of public property. The operative complaint alleged Plaintiff "fell due to the dangerous condition of the intersection . . . and due to the negligent failure to adequately warn of that dangerous condition . . . ."

Appellants filed a cross-complaint against the City (as well as Owner) for equitable indemnity and contribution. The cross-complaint alleged the City allowed Owner to stretch the hose across the Intersection "without requiring any safety precautions to alert the public." The cross-complaint further alleged that, if the Intersection constituted a dangerous condition of

2

public property (Gov. Code, § 835[1]), the City had "actual and/or constructive notice of the condition, which had existed ostensibly daily for a year . . . ."

The City moved for summary judgment on the ground, among others, that it had no actual or constructive notice of any dangerous condition of public property. The trial court granted the City's motion, and granted the City's subsequent motion for fees and costs pursuant to Code of Civil Procedure section 1038. This appeal followed.

DISCUSSION

I.      *Dangerous Condition of Public Property*

"A defendant is entitled to summary judgment if it can 'show that there is no triable issue as to any material fact.' (Code Civ. Proc., § 437c, subd. (c).) The defendant bears the initial burden of establishing that the plaintiff's cause of action has 'no merit' by showing that the plaintiff cannot prove 'one or more elements of [the] cause of action.' (*Id.*, subds. (o) & (p)(2).) If this burden is met, the 'burden shifts' to the plaintiff 'to show that a triable issue of one or more material facts exists as to the cause of action.' (*Id.*, subd. (p)(2); [citation].) We independently decide whether summary judgment is appropriate." (*Martinez v. City of Beverly Hills* (2021) 71 Cal.App.5th 508, 517 (*Martinez*).)

A.      *Legal Background*

"Public property is in a 'dangerous condition' when it 'creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used.' (§ 830, subd. (a); [citation].)" (*Martinez, supra,* 71 Cal.App.5th at p. 518.) We will assume, without

---

[1] All undesignated section references are to the Government Code.

deciding, that a hose stretched across the Intersection with no cones or other warning devices is a dangerous condition of public property.

"Even if there is a dangerous condition on public property, a public entity is liable for injuries caused by it only if the entity was negligent. . . . [¶] A public entity may be negligent—and hence liable for injuries caused by a dangerous condition on its property—in one of two ways. The public entity is negligent if it 'created the dangerous condition.' (§ 835; [citation].) The public entity is also negligent if it did not take 'measures to protect against [a] dangerous condition' (that it did *not* create) if it had 'actual or constructive notice of th[at] dangerous condition.' (§ 835; [citation].)" (*Martinez, supra,* 71 Cal.App.5th at pp. 518–519.) Appellants do not contend the City created the dangerous condition; instead, their theory is the City had notice of the condition.

"A public entity has 'actual notice of a dangerous condition' if it has (1) 'actual knowledge of the existence of the condition' and (2) 'knew or should have known of its dangerous character.' (§ 835.2, subd. (a).) To establish actual notice, '[t]here must be some evidence that the employees had knowledge of the particular dangerous condition in question'; 'it is not enough to show that the [public entity's] employees had a general knowledge' that the condition can sometimes occur." (*Martinez, supra,* 71 Cal.App.5th at p. 519.)

A public entity has constructive notice "only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." (§ 835.2, subd. (b).) In general, "it is a question of fact for the jury to determine whether the condition complained of has existed for a sufficient time to give the public

4

agency constructive notice." (*Erfurt v. State of California* (1983) 141 Cal.App.3d 837, 845 (*Erfurt*).)  However, the issue can be determined as a matter of law in certain circumstances.  (*State v. Superior Court of San Mateo County* (1968) 263 Cal.App.2d 396, 400 ["we hold, *as a matter of law*, that the requirements of constructive notice, as defined in 835.2, subdivision (b), were not met"]; *Strongman v. County of Kern* (1967) 255 Cal.App.2d 308, 315 (*Strongman*) [" 'While both the notoriety of the condition [citation] and the length of time it must have existed [citation] are normally questions of fact which are to be resolved by the jury, if the evidence as to either of these elements is insufficient *as a matter of law* the jury's verdict can not stand.' "].)

B.  *Additional Factual Background*

1.  *The City's Evidence*

With its summary judgment motion, the City submitted the following evidence.  After the permit expired in October 2015 and was not renewed, the Owner paid a public utility for the continued use of water from the hydrant, but the public utility did not advise the City of the Owner's continued water use.

The Owner's onsite contact person between October 2015 and the date of Plaintiff's accident testified she worked at the Site five days per week from 9:00 a.m. to 4:00 or 5:00 p.m.  The hose was used only when water was needed—for example, for certain concrete, cement, stucco, and plumbing work—and was always put away by the close of business.  Cones were stored with the hose and the equipment to attach the hose to the hydrant, and if she saw a contractor using the hose without the cones she would remind them to use cones and/or put the cones out herself.  The Owner testified he visited the Site two to three times per week in 2016 and saw the hose attached to the fire

5

hydrant "several times," which he clarified was more than four times but he was not sure if it was more than five times. He had "maybe" seen warning signs near the hose when it was in the Intersection.

Shek—the individual appellant—testified he worked at the Site for approximately seven or eight weeks, not on continuous days. He was at the Site an average of a few hours per day and always left before the end of the day, around 2:00 or 3:00 p.m. He testified that "[a]lmost every day" he was at the Site, the hose was out.[2]

Appellants' employee, David Choi, testified he worked at the Site for about 28 days, arriving around 9:00 a.m. and leaving at 5:00 p.m. The hose was only stretched across the Intersection when water was needed on the Site, and more often than not on the days he was there, the hose was not attached to the hydrant. When the hose was used, it was removed when water was no longer needed, and Choi had not seen the hose left out all day.

The Site's stucco contractor testified he spent approximately ten days at the Site, arriving at 9:00 a.m. and leaving at 4:30 or 5:00 p.m. He testified every time he needed water—approximately four out of the ten days—a hose was already attached to the hydrant and stretched across the Intersection when he arrived and was still there when he left. He did not recall whether the hose was present on days when he did not need water.

Plaintiff testified he crossed the Intersection by skateboard every week or two between 10:00 a.m. and 2:00 p.m. but had never seen a hose there while he was on a skateboard. Plaintiff drove across the Intersection

---

[2] Although the City asserts Shek testified "he did not pay attention to whether orange cones were in place when the hose was attached to the fire hydrant," the record cites provided do not support this assertion.

approximately twice per week, and had seen a hose in the Intersection "a couple times" when he was driving.

The two City police officers who investigated Plaintiff's accident did not recall seeing a hose stretched across the Intersection prior to the accident, although they regularly passed by the Intersection on their patrols. The five City building inspectors who performed inspections at the Site had no recollection of seeing a hose in the Intersection. The deposed Site workers, Plaintiff, Plaintiff's brother, and Plaintiff's mother all testified they did not recall seeing any City personnel present when the hose was stretched across the Intersection.

On August 25, 2015, City police received a complaint that a construction company was "using fire hydrant water source." The responding officer did not recall seeing a hose stretched across the Intersection and indicated on the report of his investigation that it "Checks OK." The City received no complaint or claim about the hose in the Intersection from August 2015 through the date of Plaintiff's accident.

### 2. *Appellants' Evidence*

With their opposition, Appellants submitted the following evidence.

A Google Street View photograph from one day in July 2016 showed the hose stretched across the Intersection with no cones or other warning devices.

A friend of Plaintiff's testified he went by the Intersection once or twice per week on his way to a store and saw the hose "a lot." He gave estimates of the number of times he saw the hose between August 2015 and Plaintiff's accident of 10 to 20 times and 20 to 30 times.[3]

---

[3] Because the deponent testified that he crossed the Intersection when traveling to the store, Appellants' attorney elicited testimony that, if the

7

Plaintiff's then-girlfriend testified that from August 2015 to the accident, she could see the hose from her balcony, and saw it "throughout" that time. With their reply, the City submitted additional portions of her deposition testimony, which clarified that she could not see the Intersection from her balcony, but could only see that the hose was by the Site.

C. *Analysis*

1. *Actual Notice*

The City produced evidence that City officials known to have passed by the Intersection—building inspectors and patrolling police officers—do not recall seeing the hose stretched across the Intersection. No deponent recalled seeing a City official at the Site when the hose was in the Intersection. The City did not receive any complaint or claim about a hose in the Intersection before Plaintiff's accident.

Appellants point to the City's issuance of the permit for use of water from the hydrant at the Site. The permit does not create a material issue with respect to actual notice. As an initial matter, although a diagram submitted with the permit application indicated the hydrant was located diagonally across the street from the Site, it did not indicate that water would be obtained by means of a hose stretched across the Intersection (despite Appellants' assertion to the contrary). Indeed, the permit issued stated it was "to be prominently displayed on tank truck during filling operation," indicating an assumption that water from the hydrant would be obtained by means of a tank truck. More significantly, the permit expired in October 2015, so any notice by virtue of the permit did not extend beyond

---

deponent saw the hose 20 to 30 times, but also saw it on his return trip from the store, he then saw the hose 40 to 60 times.

8

that date.  Appellants cite no authority that the City was obligated to ensure that water use ceased upon the permit's expiration.

Appellants additionally point to the August 2015 police complaint. This also does not create an issue of fact as to actual notice.  The complaint notified the City only that a construction company was using water from a fire hydrant—information the City already knew of because of the permit it issued—and did not notify the City that water was being accessed by means of a hose stretched across the Intersection.  There is no evidence the responding officer saw the hose.

In sum, the City satisfied its burden to show Appellants cannot establish the City had actual notice, and Appellants failed to establish an issue of fact on the matter.

### 2.    *Constructive Notice*

The evidence, construed in the light most favorable to Appellants, is that the hose was stretched across the Intersection at some times, but not at others, during the year between August 2015 and Plaintiff's accident.  It was undisputed that it was put away at the close of business.  All of the deponents who regularly saw the Intersection during this time testified that more often than not the hose was put away: the Owner's contact person at the Site, the Owner, Plaintiff, and Plaintiff's friend.[4]  The two witnesses who testified the hose was in the Intersection whenever they were at the Site on the days they noticed it—Shek and the stucco contractor—only saw the Intersection for a small part of the year: Shek was onsite a few hours per day for a maximum of eight weeks out of the year, and the stucco contractor only

---

[4] Plaintiff's then-girlfriend, who testified she saw the hose from her balcony, also testified she could not see the *Intersection* from her balcony and only saw the hose by the Site.

9

noticed the hose on the four days he needed water.  We question whether evidence that a dangerous condition is present on some days and at some times between 9:00 a.m. and 5:00 p.m. Monday through Friday for one year, but not all of this time, and never outside of this time, is sufficient to establish a public entity has constructive notice.

However, we need not decide this issue because the dangerous condition alleged by appellant is the hose stretched across the Intersection *without any cones or other warning signals.*  The City presented deposition testimony from the Owner's onsite contact person that she was at the Site every weekday, cones were stored with the hose and equipment to attach the hose to the hydrant, and if she saw a contractor using the hose without the cones she would remind them to use cones and/or put the cones out herself.  Appellants point to no conflicting witness testimony.  The only evidence Appellants presented on this issue was the Google Street View photograph showing the hose in the Intersection without cones *on a single day*.  This evidence does not contradict the Owner's onsite contact person because she testified there were times when a subcontractor used the hose without cones and when she saw it, she either put the cones out herself or told the contractor to do so.  That the Owner's onsite contact person may have had a motive to exaggerate her diligence in ensuring the use of cones is immaterial for summary judgment purposes.  "[T]he law is clear that summary judgment may not be denied solely on the basis of the credibility of the moving party's witnesses.  Code of Civil Procedure section 437c, subdivision (e), provides, 'If a party is otherwise entitled to summary judgment pursuant to this section, summary judgment shall not be denied on grounds of credibility,' " with exceptions not present here. (*Ayon v. Esquire Deposition Solutions, LLC* (2018) 27 Cal.App.5th 487, 496.)

10

Thus, the evidence construed most favorably to Appellants is the alleged dangerous condition—the hose in the Intersection without cones or other warning devices—was present *occasionally* between 9:00 a.m. and 5:00 p.m. Monday through Friday, but not present *most* of this time, and never present outside of this time. "The critical test [for constructive notice] formulated by the cases is whether 'the condition has existed long enough that it may be inferred that a reasonable inspection would have ascertained its existence.'" (*Strongman, supra,* 255 Cal.App.2d at p. 313.) The City could well have conducted reasonable inspections of the Intersection between August 2015 and Plaintiff's accident, yet not seen the alleged dangerous condition. To permit a finding of constructive notice in such circumstances would impose too great a burden on the public entity. As one court reasoned, in finding no constructive notice as a matter of law where the plaintiff slipped on vomit in an area known to often have vomit on the sidewalk, "As a practical matter, if we were to [permit a finding of constructive notice], the city would have to have inspectors circulating throughout the area, day and night, . . . to discover and remove such material from the sidewalks. In our opinion, to state this proposition is to refute it." (*Kotronakis v. City and County of San Francisco* (1961) 192 Cal.App.2d 624, 630 (*Kotronakis*).)

The authority relied on by Appellants is inapposite. In most of the cases cited, the dangerous condition was constant and had persisted for a substantial period of time; therefore, unlike here, a single inspection during the time the condition existed would have provided notice. (See *Levine v. City of Los Angeles* (1977) 68 Cal.App.3d 481, 489 [the dangerous condition, a sudden narrowing of a roadway, "was an obvious one which had continued for a number of years"]; *Anderson v. City of Thousand Oaks* (1976) 65 Cal.App.3d 82, 91 [city had constructive notice of dangerous condition, roadway curve

11

without reduced speed zone, where it existed "from the time it was first opened to traffic until the accident occurred approximately six weeks later"]; *Lorraine v. City of Los Angeles* (1942) 55 Cal.App.2d 27, 30 [sufficient evidence of notice of a hole in the sidewalk where it "had existed for a month or six weeks prior to the date of [the plaintiff's] fall"]; *Sheldon v. City of Los Angeles* (1942) 55 Cal.App.2d 690, 693 ["since the dangerous condition [of one and one-half inch difference in sidewalk elevation] had existed for more than a year, the city had constructive notice of the defect in its sidewalk"].) "Cases involving broken sidewalks, holes in pavements, and other similar conditions of a more or less permanent character (that is, permanent unless repaired) are quite different from this case, which involves a transitory condition . . . ." (*Kotronakis, supra,* 192 Cal.App.2d at pp. 630–631.)

The two cases cited by Appellants involving nonpermanent dangerous conditions are distinguishable. In *Straughter v. State of California* (1976) 89 Cal.App.3d 102, the plaintiff was injured in an accident caused by ice on the interstate. (*Id.* at p. 104.) Although that particular patch of ice had only appeared that morning, the stretch of interstate had been listed as icy in state reports for the previous seven days; in addition, workers inspected the area hours before the accident and saw "low damp fog" but did not return, despite knowing that freezing temperatures were predicted and despite the state highway manual requirement that such areas should be " 'continuous[ly]' " patrolled. (*Id.* at pp. 104–107.) The Court of Appeal held "[t]he jury could readily conclude that given the facts concerning the fog and temperatures, detailed above, known to [the state worker] in the early morning of [the accident], [the worker] did not conduct a reasonable inspection under the circumstances, as he failed to continue his patrols and admittedly failed to carefully monitor the temperatures." (*Id.* at p. 111.) In

other words, although the actual dangerous condition was temporary, the state had notice of conditions known to cause the dangerous condition and failed to follow the prescribed policy. An entirely different situation is present here.

In *Erfurt, supra,* 141 Cal.App.3d 837, the plaintiff was driving on the freeway at sunrise, was blinded by the sun as she reached a hill crest, and saw no highway lane markings when she looked down to the side. (*Id.* at p. 840.) She kept driving straight when, unbeknownst to her, the freeway split into a "Y" with a pillar in the center surrounded by a guardrail, which the plaintiff struck. (*Id.* at pp. 840–841.) There was evidence this stretch of freeway was affected by the sun's glare about 20 days per year, for 15 to 25 minutes per day. (*Id.* at p. 842.) The plaintiff's expert opined that "the combination of improper 'channelization' with the absence of devices to properly warn of and guide a driver around the abutment in the middle of the freeway constituted a dangerous condition at certain times." (*Id.* at p. 843.) The Court of Appeal found sufficient evidence to find constructive notice: "While the particular dangerous condition in this case existed only 20 some days of the year, it had been in existence for over 10 years, since the construction of the highway in 1966. Under such circumstances the jury could reasonably find constructive notice of the dangerous condition." (*Id.* at p. 844.) Thus, while the glaring light of the sun was not always present, the road conditions—improper channeling and lack of warning devices—were, and provided notice that the roadway could be a dangerous condition at certain times. (*Id.* at p. 843 ["the pattern of traffic control *itself* was *part* of the dangerous condition"].) In contrast, there was no aspect of the alleged dangerous condition here that was always present.

### 3.    *Conclusion*

The City established that Appellants cannot prove the City had actual or constructive notice of the alleged dangerous condition.  Accordingly, we affirm the trial court's order granting summary judgment to the City, and need not decide the parties' remaining arguments regarding this order.[5]

## II.    *Fees and Costs*

Appellants also challenge the trial court's finding that the City was entitled to fees and costs pursuant to Code of Civil Procedure section 1038. On this issue, we reverse.[6]

"Under Code of Civil Procedure section 1038, certain defendants in civil proceedings under the Government Claims Act (Gov. Code, § 810 et seq.) may recover defense costs, including reasonable attorney's fees, if the court determines the proceeding was not brought 'with reasonable cause and in the good faith belief that there was a justifiable controversy under the facts and law.'  (Code Civ. Proc., § 1038.)"  (*Lee v. Department of Parks & Recreation* (2019) 38 Cal.App.5th 206, 215 (*Lee*).)  "For a defendant to recover fees, it is sufficient if the trial court finds the plaintiff lacks either reasonable cause or good faith."  (*Id.* at p. 215.)  The trial court did not find, and the City does not contend, that Appellants lacked good faith.

---

[5] Although we are affirming in part on a ground not relied on by the trial court, "supplemental briefing is not required under Code of Civil Procedure section 437c, subdivision (m)(2) because the ground on which we rely has already been briefed on appeal."  (*Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1175, fn. 16; accord, *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1147, fn. 7.)

[6] The City's motion sought, in the alternative, an award of costs incurred after a Code of Civil Procedure section 998 settlement offer.  On remand, the City may seek this alternative relief.

14

"Reasonable cause is an objective standard, determined as a matter of law on the basis of facts known to the plaintiff when [the plaintiff] filed or maintained the action. [Citation.] Courts have also defined reasonable cause under an objective standard as ' " 'whether any reasonable attorney would have thought the claim tenable.' " ' " (*Lee, supra,* 38 Cal.App.5th at pp. 215–216, fn. omitted.) "A defendant may not recover section 1038 costs simply because it won a summary judgment or other dispositive motion; victory does not per se indicate lack of reasonable cause." (*Kobzoff v. Los Angeles County Harbor/UCLA Medical Center* (1998) 19 Cal.4th 851, 856.) "Reasonable cause is often found lacking in cases in which the public entities show they did not own or operate the injury site. [Citations.] . . . 'The easy case for lack of reasonable cause is one in which the plaintiff (and thus [the plaintiff's] attorney) can be shown to have been aware that an element of the cause of action was missing.' [Citation.] 'If a legislative purpose to protect public entities from meritless claims is to be served, a plaintiff must bear a burden of investigation sufficient to establish at least a basis for reasonable belief that all elements exist. Abstract hope is not reasonable belief: Under section 1038 a plaintiff who lacks even the basis for a reasonable belief in the existence of all essential elements of [a] claim cannot simply name every conceivable defendant and rely on what future discovery may turn up.' " (*Id.* at p. 858.) " ' "Reasonable cause" ' is determined objectively as a matter of law and is subject to de novo review." (*Lee,* at p. 215.)

The trial court found that when Appellants learned the City permit had expired months before the accident, they should have known the cause of Plaintiff's accident was their own negligence, and not a dangerous condition of public property. On appeal, the City relies on the permit's expiration, as

15

well as Appellants' knowledge that it was their employee who left the hose out on the day of Plaintiff's accident.

Neither the expired permit nor the undisputed fact that Appellants' employee left out the hose that allegedly injured Plaintiff render Appellants' claim against the City frivolous. We need not, and do not, decide whether a hose continuously left stretched across an intersection without cones or other warning devices is a dangerous condition of public property even if the public entity did not itself place the hose there and even if a previously granted permit had since expired. It is sufficient that such a claim is a colorable one. Appellants' cross-complaint did not lack reasonable cause.

## DISPOSITION

The trial court's order finding the City entitled to reasonable fees and costs pursuant to Code of Civil Procedure section 1038 is reversed. On remand, the City may seek costs pursuant to Code of Civil Procedure section 998 (see *ante,* fn. 6). In all other respects, the judgment is affirmed. The parties shall bear their own costs on appeal.

16

_____

SIMONS, J.

We concur.

_____

JACKSON, P. J.

_____

BURNS, J.

(A163204)